# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2246

THOMAS GIBBS,

*Petitioner-Appellant,*

v.

JOHN R. VANNATTA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:00-CV-0471 AS—**Allen Sharp**, *Judge.*

ARGUED APRIL 14, 2003—DECIDED MAY 21, 2003

Before CUDAHY, POSNER, and EASTERBROOK, *Circuit Judges.*

POSNER, *Circuit Judge.* Thomas Gibbs appeals from the denial of his petition for federal habeas corpus. He had been prosecuted in an Indiana state court in 1984 on 19 counts of burglary, 19 counts of theft (arising from the same incidents), and in addition a count of being a habitual offender because he "had accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-2-8. At his trial, evidence of 39 other, unrelated burglaries was introduced by the prosecution in an effort to establish Gibbs's modus operandi. He was not charged with those burglaries, but he was convicted on all 39 counts with which he was charged

(the 19 counts of burglary, the 19 counts of theft, and the single count of being a habitual offender). He received a heavy sentence—24 years for the 38 burglaries and thefts, and another 30 years, to run consecutively to the 24-year sentence, for being a habitual offender. He appealed, arguing that the evidence of the 39 extraneous burglaries had been unduly harmful to his defense against the burglary and theft charges. He did not argue that the evidence had hurt his defense against the charge of being a habitual offender. The appellate court vacated 17 of the 19 burglary convictions and 17 of the 19 associated theft convictions, but upheld his conviction for being a habitual offender. He then sought postconviction relief in the state courts, arguing that his appellate counsel had been incompetent in failing to argue that the evidence of the extraneous burglaries had undermined his defense against the habitual-offender charge as well. The courts turned him down, on the ground that to prevail in a postconviction challenge to a conviction for being a habitual offender the petitioner must prove that he is not the one, and he cannot do an "end run" around this rule by claiming that the counsel in his direct appeal was incompetent. *Gibbs v. Indiana*, No. 48A02-9903-PC-210, slip op. at 6 (Ind. Ct. App. Jan. 31, 2000); see *Lingler v. State*, 644 N.E.2d 131, 133 (Ind. 1994).

In order to demonstrate that his federal constitutional right to effective assistance of counsel was violated, a defendant must show that effective assistance would have given him a reasonable shot at acquittal. That is a different and lower standard than having to prove that he was in fact innocent of the charge. And so the ruling by the Indiana state courts does not establish that Gibbs was denied effective assistance of counsel, but only that he has not proved that he was innocent of the habitual-offender charge. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *United States*

*ex rel. Bell v. Pierson*, 267 F.3d 544, 552 (7th Cir. 2001); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). He could not have proved that; the evidence that he had two prior unrelated felonies was overwhelming and indeed is uncontested. But this does not dispose of the ineffective-assistance claim, as the Indiana courts erroneously ruled. A criminal defendant is entitled to effective assistance of counsel even if he can't prove that he is innocent of the crime with which he was charged, though he must show that with effective assistance he would have had a shot at acquittal. Nevertheless Gibbs is not entitled to relief in the federal courts unless he can show that he was in fact denied effective assistance of counsel, not merely that the state courts bobbled the issue, *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003); and let us turn to that question, which pivots on the provision of the Indiana Constitution that "in all criminal cases whatever, the jury shall have the right to determine the law and the facts." Ind. Const. art. I, § 19.

This provision is not merely a bow to the inevitable—a recognition that since acquittals are not appealable a jury has the power to ignore, or as the cases say (rather too dramatically) to "nullify," the law under which the defendant is being prosecuted. Only to the most uncompromising realist are power and authority synonyms. A jury does not have the authority to disregard the law, and as a result (a concrete consequence of the abstract distinction between power and authority) a defendant's lawyer is not permitted to argue to the jury that it should disregard the law; nor does the judge let on to the jury that it has the power to acquit in the teeth of the law. *Sparf v. United States*, 156 U.S. 51, 102 (1958); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997); *United States v. Anderson*, 716 F.2d 446, 449-50 (7th Cir. 1983); *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996); *United States v. Dougherty*,

473 F.2d 1113, 1136-37 (D.C. Cir. 1972); Erick J. Haynie, "Populism, Free Speech, and the Rule of Law: The 'Fully Informed' Jury Movement and Its Implications," 88 *J. Crim L. & Criminology* 343, 354-57 (1997). But in Indiana the jury has the authority, not to disregard the law, but to disregard the *interpretation* of the law by judges; we know this because juries in Indiana are instructed that, as the judge instructed the jury in Gibbs's case, "the Constitution of Indiana provides that in all criminal cases whatsoever the jury shall have the right to determine and construe the law for yourselves although your determination may differ from that stated by the Court in its instructions, but in determining the law it is your sworn duty to determine it correctly." See *Seay v. State*, 698 N.E.2d 732 (Ind. 1998). In effect the jury is given the same authority that a trial judge has to interpret the law ( except that the jury's interpretation is unreviewable); but like a judge it must try to interpret the law correctly.

This unusual grant of authority to Indiana juries opened the door to Gibbs's trial lawyer to argue—and he did argue—that despite Gibbs's two prior convictions the jury should "not find my client an habitual offender. And you can do that if you wish." As the Indiana Supreme Court said in the *Seay* case, "the jury in the habitual offender proceeding is permitted to render a verdict that the defendant is not a habitual offender even if it finds that the State has proven beyond a reasonable doubt that the defendant has accumulated two prior unrelated felonies." *Id.* at 734. But the jury was hardly likely to acquit with not only the 39 extraneous burglaries staring them in the face but also the 38 burglary and theft charges against Gibbs which, although not prior unrelated felonies, certainly suggested that he was a habitual offender. Gibbs's appellate lawyer should not only have argued that the evidence of the 39 extraneous burglaries had impaired his client's defense to the charge of being a habitual offender but also

that if any of the 38 convictions were reversed the case should be remanded so that the jury could consider the habitual-offender charge free from the contamination of invalid convictions as well as of inadmissible evidence.

In these circumstances there can be no doubt that Gibbs's appellate lawyer fell below the minimum level of competent representation of a criminal defender facing a 30-year sentence as a habitual offender. The state's argument that the lawyer had no duty to challenge the habitual-offender conviction because the prosecution had Gibbs cold—the proof of the two unrelated prior felonies being uncontested—falls flat given the interpretive latitude that Indiana vests in the jury. It is true that the jury is supposed to interpret the law rather than to change it; but if it were asked to interpret the habitual-offender statute to allow leniency in a case in which the circumstances suggested that the defendant's prior unrelated felony convictions were not indicative of habitual criminality, this would not be so great a stretch that the judge would or could properly forbid the defendant's lawyer to make the argument. Gibbs's lawyer did argue for leniency and the prosecution did not object or the judge rule the argument out of order. But the lawyer's hands were tied, for the jury had just found his client guilty of 38 counts of burglary and theft and had heard evidence of 39 more burglaries.

All this said, we do not think that Gibbs has shown sufficient likelihood that with competent representation he would have beaten the habitual-offender rap to warrant further proceedings. Supposing that a competent lawyer would have gotten him a new hearing in which there would have been no reference to either the 34 counts of burglary and theft that had been thrown out or the 39 uncharged burglaries, Gibbs has failed to point to anything that would have enabled him to climb the steep hill looming

before him. The habitual-offender statute states that if you have two prior unrelated felonies, you're a habitual offender. Period. And he had. And the jury is supposed to interpret the law rather than change it. To have a reasonable chance of getting the jury to find that exceptional circumstances warrant an adventurous interpretation of the statute that would depart from its literal terms in the direction of lenity, you must have—exceptional circumstances. None is suggested. Compare those cases in which, to show that with competent representation a capital defendant would not have been sentenced to death, the defendant in postconviction proceedings retains a "mitigation specialist" who gathers the evidence that the lawyer at the sentencing hearing should have presented, to show that such evidence existed. E.g., *Emerson v. Gramley*, 91 F.3d 898, 907 (7th Cir. 1996); *Brewer v. Aiken*, 935 F.2d 850, 857-58 (7th Cir. 1991); *Mason v. Mitchell*, 320 F.3d 604, 622-23 (6th Cir. 2003). No evidence of exceptional circumstances has been presented in this case. If it had been, moreover, the cases that we have just cited indicate that the prosecution would have been free to counter Gibbs's evidence with the 39 extraneous burglaries, for they would furnish a reason for the jury to exercise its interpretive discretion against leniency.

Evidence of exceptional circumstances was not the only missing link in an appeal to article I, section 19 of the Indiana Constitution. The lawyer failed to lay out an interpretive path from the particular circumstances of the case to a conclusion that, despite the wording of the habitual-offender statute, the statute could be interpreted to let off his client. The distinction between merely asserting a conclusion and reaching it by interpretation is familiar from administrative law, where an agency's authority to interpret a statute or regulation requires that it employ a methodology fairly describable as interpretive rather

than merely assertive. E.g., *Hoctor v. U.S. Dept. of Agriculture*, 82 F.3d 165, 170-71 (7th Cir. 1996). The failure of Gibbs's lawyer to find an interpretive route to the desired conclusion may seem just another strike against his competence; but even his present lawyer cannot find a route. There appear to be no facts that would justify an interpretation of the habitual-offender statute that would acquit Gibbs, whatever might be the case for some others accused of being habitual offenders.

AFFIRMED.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*