# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**WILLIAM D. POLANSKY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

May 22 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES A. WALKER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 46A04-1210-PC-519 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Kathleen B. Lang, Judge
Cause No. 46D01-1207-PC-211

**May 22, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Charles Walker appeals the denial of his petition for post-conviction relief. He claims

that his trial and appellate counsel provided ineffective assistance in failing to challenge the

sufficiency of evidence to support a habitual offender finding against him and in failing to

challenge the habitual offender jury instructions and verdict form. Finding no clear error in

the post-conviction court's judgment, we affirm.

**Facts and Procedural History[1]**

The facts as summarized in an unpublished memorandum decision on Walker's direct

appeal are as follows:

> On November 29, 2005, Russell Folino received a telephone call from the Franklin Bar and Grill (the bar) in LaPorte County indicating that he had won a raffle prize of $730. Folino was a regular at the bar. His girlfriend drove him there around 6:00 that evening, and he collected his winnings in open view. There were roughly thirty or forty people in the bar that Tuesday evening. Folino placed all but about $100 of the money in his wallet, which he kept in his back pocket. With the remaining money, Folino began buying drinks for himself and his friends. Folino, who was very joyous about his winnings, was warned by the bartender and a friend to be more careful with the money.
> Walker arrived at the bar alone around 7:00. While inside the bar, he wore a large winter jacket with a fur-[t]rimmed hood. Walker roamed the bar but at times was in close proximity to Folino. Timothy Malott, a friend of Folino's, became nervous when Walker moved in close and "seemed to be eyeballing [Folino's] wallet." Malott nudged Folino and warned, "Hey, man, be cool with that wallet open. We don't know all these people." Folino agreed and put his wallet back in his pocket.
> Around 7:30, Folino went into the empty men's restroom, followed soon by Walker. As Folino was at the urinal, a man entered and struck him in the head multiple times from behind. The heavy blows caused Folino to

---

[1] Walker filed a motion requesting that we take judicial notice of our memorandum decision in *State v. Hairston*, No. 02A04-1209-PC-476 (Ind. Ct. App. March 15, 2013), which we deny in an order issued contemporaneously with this opinion.

collapse to one knee. Folino pushed the man against the sink, and then the man fell on top of Folino. As the two struggled on the ground, the man reached "straight for [Folino's] back pocket" and took his wallet. The man then kicked Folino and ran out the bathroom door. Folino could not identify his attacker. Folino, however, indicated that the man wore a big parka with "fur edging" around the hood, which was pulled down over his face.

Others in the bar heard the commotion coming from inside the bathroom. Soon thereafter, Walker ran out of the bathroom and out of the bar, knocking down chairs along his way. He was wearing his coat with the hood up. Malott testified that he could "definitely" tell it was Walker who ran by him and out of the bar. Folino exited the bathroom disoriented and badly beaten. He exclaimed, "That guy just stole my wallet."

About two weeks later, Walker was arrested and he voluntarily gave a statement to a detective. Walker admitted being at the bar on the night in question. Walker stated that he was using the bathroom when an intoxicated Folino walked in and proceeded to accidentally urinate on Walker's shoe. Walker alleged that Folino then directed a racial slur at him. As a result, Walker admittedly struck Folino at least twice in the face, causing Folino to fall to the ground. Walker, however, denied robbing Folino and explained that when the incident was over[,] he (Walker) simply walked out of the bathroom and exited the bar. …. Following a jury trial, Walker was convicted of robbing Folino. He was also adjudicated a habitual offender.

*Walker v. State*, No. 46A05-0612-CR-717 (Ind. Ct. App. Aug. 24, 2007) (citations omitted).

During the habitual offender phase of Walker's trial, the State introduced exhibits containing dockets and abstracts of judgment concerning the following prior felony offenses: a 1980 robbery conviction, a 1989 burglary conviction, and two 1995 cocaine dealing convictions. Law enforcement witnesses testified concerning their investigations of and interactions with Walker at the time of his 1980 and 1989 convictions. The trial court subsequently sentenced Walker to twenty years for the robbery conviction, plus twenty years on the habitual offender count.

Walker appealed, challenging the sufficiency of the evidence supporting the robbery conviction and the appropriateness of his forty-year sentence. Another panel of this Court

3

affirmed his conviction and sentence. He subsequently filed a petition for post-conviction relief, claiming that he received ineffective assistance from both trial and appellate counsel. Following a hearing, the post-conviction court concluded that he failed to establish that either trial or appellate counsel rendered ineffective assistance and denied his petition. He now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Walker contends that the post-conviction court erred in denying his petition for post-conviction relief. The petitioner in a post-conviction proceeding "has the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Brown v. State*, 880 N.E.2d 1226, 1229 (Ind. Ct. App. 2008), *trans. denied*. When issuing its decision to grant or deny relief, the post-conviction court must make findings of fact and conclusions of law. Ind. Post-Conviction Rule 1(6). A petitioner who appeals the denial of his post-conviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Brown*, 880 N.E.2d at 1230 (citation and quotation marks omitted). In other words, if a post-conviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the post-conviction

4

court. *Massey*, 955 N.E.2d at 253.

In his post-conviction petition, Walker alleged that he received ineffective assistance of counsel. To prevail on an ineffective assistance claim, he must satisfy two components. *Id.* He must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Brown*, 880 N.E.2d at 1230. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). Prejudice occurs when a reasonable probability exists that, "but for counsel's errors the result of the proceeding would have been different." *Brown*, 880 N.E.2d at 1230. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 946 N.E.2d 640, 643 (Ind. Ct. App. 2011), *trans. denied*. We can dispose of claims upon failure of either component. *Brown*, 880 N.E.2d at 1230.

## I. Trial Counsel

### A. Identity and Sequence of Predicate Offenses

Walker first claims that his trial counsel provided ineffective assistance in failing to challenge the sufficiency of evidence to support the habitual offender finding via a motion for directed verdict. To establish that Walker is a habitual offender, the State was required to prove beyond a reasonable doubt that he had been previously convicted of two separate and unrelated felonies. Ind. Code § 35-50-2-8.[2] To be "unrelated," the defendant must have committed the second felony after being sentenced for the first and must have been sentenced for the second felony prior to committing the current felony for which the enhanced sentence was sought. Ind. Code § 35-50-2-8(c); *Lewis v. State*, 769 N.E.2d 243, 246 (Ind. Ct. App. 2002), *trans. denied*. Walker asserts that the evidence was insufficient to establish (1) his identity; and (2) the sequence of the predicate offenses. The post-conviction court concluded

---

[2] The State asserts that according to *Weatherford v. State*, 619 N.E.2d 915 (Ind. 1993), and *Lingler v. State*, 644 N.E.2d 131 (Ind. 1994), in his post-conviction proceedings, Walker was required to "demonstrate that he was not an habitual offender under the laws of the state" and that he could not prevail merely by asserting that the State did not carry its burden of proof. *Weatherford*, 619 N.E.2d at 917-18. The post-conviction court agreed and concluded that Walker had failed to demonstrate that he was not a habitual offender. Walker claims that *Gibbs v. VanNatta*, 329 F.3d 582 (7th Cir. 2003), should control. In *Gibbs*, the Seventh Circuit rejected the *Lingler* approach, reasoning that "[a] criminal defendant is entitled to effective assistance of counsel even if he can't prove that he is innocent of the crime with which he was charged, though he must show that with effective assistance he would have had a shot at acquittal." *Id*. at 584.

Post-Conviction Rule 1(8) and our supreme court's more recent decisions dictate that a habitual offender sufficiency challenge could not be raised as a freestanding claim of error in a post-conviction proceeding today. *See*, *e.g.*, *Canaan v. State*, 683 N.E.2d 227, 235 (Ind. 1997) ("An available grounds for relief not raised at trial or on direct appeal is not available as a grounds for collateral attack."). Rather, "[i]n post-conviction proceedings, complaints that something went awry at trial are generally cognizable *only when they show deprivation of the right to effective counsel* or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002) (emphasis added). Walker properly presented his challenge to the habitual offender finding via an ineffective assistance of counsel claim, and we review it accordingly. We note, however, that we review using the two-pronged *Strickland* standard and decline Walker's invitation to weigh in on the variance in the approaches taken by the Seventh Circuit and our supreme court in *Gibbs* and *Lingler* respectively.

that Walker's 1994 felony cocaine offenses were statutorily ineligible to be used as predicate offenses under the habitual offender statute. Ind. Code § 35-50-2-8(d)(3). Thus, we limit our discussion to his 1980 robbery conviction and the 1989 burglary conviction.

With respect to identity, we note that

[C]ertified copies of judgments or commitments containing the same or similar name as the defendant may be introduced to prove the commission of prior felonies, [but] there must be other supporting evidence to identify defendant as the same person named in the documents. This proof of identity may be in the form of circumstantial evidence. A sufficient connection between the documents and the defendant is made if the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of the two felonies alleged.

*Baxter v. State*, 522 N.E.2d 362, 365 (Ind. 1988).

Here, the State introduced Exhibits 28 (the certified docket and sentencing transcript from Walker's 1980 robbery case) and 29 (the certified docket and abstract of judgment from Walker's 1989 burglary case) in support of the habitual offender count against Walker. In addition, the State presented supporting testimony concerning Walker's identity as the perpetrator in both cases. Michigan City Police Detective Louis Jacobucci testified that he had investigated the 1980 robbery case and identified Walker both physically and by cause number as the same Charles A. Walker convicted of that robbery. Trial Tr. at 240-41. Probation officer Shirley Griffin testified concerning Walker's identity as the Charles Walker who committed the 1989 burglary. She affirmed that she worked with him when he was placed on probation after completing his incarceration for his 1989 class B felony burglary conviction. *Id*. at 243. She then identified him in court. *Id*. at 244.

At the post-conviction hearing, Walker's trial counsel testified that he believed the evidence was sufficient to tie Walker to the predicate offenses. PCR Tr. at 15. We agree and conclude that the State made a sufficient connection between the documents and Walker to yield logical and reasonable inferences from which the trier of fact determined that it was indeed Walker who was convicted of the two felonies alleged. Thus, we conclude that Walker's trial counsel was not ineffective in this respect.

Walker also asserts that the State failed to present documentary evidence establishing the proper sequencing of the predicate offenses and that his trial counsel rendered deficient performance in failing to request a directed verdict on that basis. The habitual offender information alleges in pertinent part with respect to the predicate offenses,

> 1. On *or about* February 8, 1980, CHARLES ALLEN WALKER, committed the felony offense of Robbery, for which the Defendant was charged under cause number 4949 before the LaPorte Superior Court No. 1 at Michigan City, Indiana, and for which the Defendant was convicted and subsequently sentenced on or about August 1, 1980, to a determinate period of twelve (12) years in the Indiana Department of Corrections; and
>
> 2. On *or about* the [sic] March 24, 1989, CHARLES ALLEN WALKER committed the felony offense of Burglary, for which the Defendant was charged under cause number 46D01-8903-CF-027 before the LaPorte Superior Court No. 1 at Michigan City, Indiana, and for which the Defendant was convicted and sentenced on or about July 28, 1989, to a determinate period of seven (7) years in the Indiana Department of Correction[.]

Appellant's Dir. Appeal App. at 16 (emphases added).[3]

---

[3] In his brief, Walker points out the inaccuracy of his habitual offender charging information with respect to commission dates, clarifying that he committed the 1980 robbery on February 4, not February 8, and that he committed the 1989 burglary on March 10, not March 24. Appellant's Br. at 5. We note that the charging information for the habitual offender count reads "on or about" the date specified for each predicate offense.

The sequence of the predicate offenses is paramount when making a habitual offender determination. Thus, Walker must have committed the burglary after he was sentenced for the robbery and must have been sentenced for the burglary before he committed the instant felony offense. Ind. Code § 35-50-2-8(c). The crux of Walker's argument concerning sequencing is that the State never established the commission date for the 1989 burglary because the State never introduced the charging information for that offense.[4] The State introduced the docket and the abstract of judgment as evidence of Walker's 1989 burglary, but neither document lists a commission date for that offense. Instead, State's Exhibits 29A and 29C establish only a charging date (March 31, 1989), a conviction date (June 30, 1989), and a sentencing date (July 28, 1989). Thus, the only document containing the commission date was the document that the State neglected to offer.

Walker now claims that his trial counsel performed deficiently in failing to request a directed verdict. We agree. However, even if defense counsel had requested a directed verdict, the State simply could have requested that the trial court exercise its discretion and grant permission to reopen the case to introduce the 1989 charging information. *Ford v. State*, 523 N.E.2d 742, 745 (Ind. 1988). In *Ford*, our supreme court held that the trial court acted within its discretion in granting the State's request to reopen the habitual offender case to introduce certified records concerning a predicate felony conviction that had been referenced by a State's witness during its case in chief. *Id.* at 746. The *Ford* court reasoned

---

[4] Walker introduced the charging information for his 1989 burglary as Petitioner's Exhibit 11 in the post-conviction proceedings.

that "a trial is not a game of technicalities, but one in which the facts and truth are sought." *Id*. In short, even if Walker's trial counsel had requested a directed verdict, the State could have offered the missing document. Thus, it is not reasonably probable that Walker would have received a different outcome on the habitual offender count. Based on the foregoing, we conclude that Walker was not prejudiced by his trial counsel's failure to request a directed verdict on the habitual offender count.

### B. Jury Instructions

Walker also claims that his trial counsel was ineffective in failing to object to the jury instructions regarding the habitual offender finding. "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law of the case." *Flake v. State*, 767 N.E.2d 1004, 1007 (Ind. Ct. App. 2002).[5]

> Here, the challenged instructions state,
>
> The status of Habitual Offender is defined by statute as follows: The State may seek to have a person sentenced as an Habitual Offender for any felony by proving that the person has accumulated two prior unrelated felony convictions. To convict the Defendant, the State must prove that the Defendant accumulated at least two prior unrelated felony convictions as follows: The Defendant (1) was convicted of a felony, to wit, Robbery, on August 1, 1980; (2) [w]as convicted of a felony, to wit, Burglary, on July 28, 1989; (3) [w]as convicted of a felony, to wit, Dealing in Cocaine as a B felony and Dealing in Cocaine as a[n] A felony, on July 20, 1995; and thereafter was convicted of the crime charged in Phase 1 of this case.
>
> If the State failed to prove that the Defendant had accumulated two prior

---

[5] Although *Flake* addressed our review of jury instructions in a direct appeal setting, we consider the same concepts when reviewing instructions presented in a post-conviction proceeding as part of an ineffective assistance of counsel claim. *See*, *e.g.*, *Eichelberger v. State*, 852 N.E.2d 631, 636-37 (Ind. Ct. App. 2006), *trans. denied*.

unrelated felony convictions, beyond a reasonable doubt, you must not find the Defendant to be an Habitual Offender. *If the State did prove beyond a reasonable doubt that the Defendant has accumulated two prior unrelated felony convictions, you may find the Defendant to be an Habitual Offender.*

....

The Defendant must have committed the first felony and have been sentenced for it before he commits and is sentenced for the second felony, and the second felony must have preceded the commission of the offenses for which the Defendant was found guilty in the first part of this trial to support a habitual offender determination.

PC Ex. 5 (emphasis added).

Walker argues that based on the portion of the instructions highlighted above, the jury could have concluded that he was a habitual offender without making any determination regarding the proper sequence of the predicate offenses. We disagree and conclude that these instructions, taken together, provide an accurate statement of the law with respect to a habitual offender finding. The last portion of the instructions listed above addresses the statutory sequencing requirements and thus explains more specifically what it means for two prior felony convictions to be "unrelated." Thus, Walker's trial counsel did not render deficient performance by failing to object to the jury instructions concerning the habitual offender determination.

### *C. Verdict Form*

Walker also asserts that trial counsel provided ineffective assistance by failing to object to the habitual offender verdict form. The challenged form states,

SPECIFIC FINDINGS

We, the Jury, find that the Defendant Charles A. Walker, has the

11

following prior felony convictions:

      1.  Robbery                                 ____Yes     ____No
           August 1, 1980

      2.  Burglary
           July 28, 1989                   ____Yes     ____No

      3.  Dealing in Cocaine
           A felony
           Dealing in Cocaine
           B felony
           July 20, 1995                   ____Yes     ____No

      4.  Robbery
           Phase I of this trial          ____Yes     ____No

VERDICT

We, the Jury, find that the defendant

____ is

____ is not

an habitual offender.

Dated this ____ day of July, 2006.

Appellant's Dir. Appeal App. at 19.

Walker claims that the verdict form was deficient because it did not explicitly show that the jury found the proper sequence of the predicate offenses. This argument was considered and rejected in *Seay v. State*, 698 N.E.2d 732 (Ind. 1998), and *Parks v. State*, 921 N.E.2d 826, 833-34 (Ind. Ct. App. 2010), *trans. denied*. Although the jury may be requested to make specific findings to preserve the validity of the habitual offender enhancement in the

12

event a predicate felony is later overturned,[6] "there is no requirement that the verdict form specify all the necessary findings." *Id*. at 834. As previously discussed, the trial court verbally instructed the jury that Walker's predicate offenses must have occurred in the proper sequence in order to adjudicate him a habitual offender. The verdict form specifically required the jury to check whether they did or did not find Walker to be a habitual offender, a determination that by definition incorporates the sequencing of the predicate offenses. We presume that the jury followed the instructions it was given. *Tormoehlen v. State*, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006), *trans. denied*. As such, we find no deficiency in trial counsel's performance in failing to object to the verdict form.

## II. *Appellate Counsel*

Walker also contends that his appellate counsel provided ineffective assistance. The standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Lowery v. State*, 640 N.E.2d 1031, 1048 (Ind. 1994) *cert. denied* (1995). The petitioner must establish deficient performance by appellate counsel resulting in prejudice. *Id*. "Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). "[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate

---

[6] Here, the 1995 cocaine dealing offenses were not overturned, but the post-conviction court found them to be statutorily ineligible for use as prior unrelated felonies to support a habitual offender finding. Ind. Code § 35-50-2-8(d)(3).

counsel." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006). In evaluating whether appellate counsel performed deficiently by failing to raise an issue on appeal, we apply the following test: (1) whether the unraised issue is significant and obvious from the face of the record and (2) whether the unraised issue is "clearly stronger" than the raised issues. *Henley*, 881 N.E.2d at 645. For countless years, experienced advocates have "emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997) *cert. denied* 1998) (citation and quotation marks omitted). Thus, when reviewing these types of claims, we should be particularly deferential to appellate counsel's strategic decision to exclude certain issues in favor of other issues more likely to result in a reversal. *Id.* As a result, "[i]neffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed*, 856 N.E.2d at 1196.

Walker claims that his appellate counsel was ineffective in failing to raise the same habitual offender issues that formed the basis for the claims against his trial counsel, i.e., insufficient evidence concerning identity and sequence, improper jury instruction, and improper verdict form. On direct appeal, appellate counsel raised two issues: the sufficiency of evidence supporting Walker's robbery conviction and the appropriateness of his forty-year sentence. Appellate counsel did not testify at the post-conviction hearing because he was deceased. Thus, it is difficult to determine why appellate counsel may have raised those issues instead of issues concerning Walker's habitual offender designation. Consequently, we look for guidance in the post-conviction exhibits pertaining to Walker's direct appeal.

Petitioner's Exhibits 2 and 3 (the memorandum decision in Walker's direct appeal and his appellant's brief on appeal) indicate that appellate counsel *did* request that this Court vacate the habitual offender finding. He did so in conjunction with his appropriateness of sentence claim, specifically challenging the trial court's statement in the sentencing order that Walker's robbery and habitual offender "sentences will run consecutively." Petitioner's Ex. 3 at 11, 13. This Court addressed Walker's argument and found that notwithstanding the trial court's incorrect terminology, this "technical error" did not warrant vacating the habitual offender adjudication. *Walker*, slip op. at 6 n.4.

Moreover, the record in Walker's direct appeal contains a bond reduction investigation report and a presentence investigation report. Appellant's App. at 34, 38. Both documents list Walker's numerous convictions spanning his entire adult life, including not only the predicate offenses that served as the basis of his habitual offender finding, but also other felony and misdemeanor offenses. Because appellate counsel chose to raise appropriateness of Walker's sentence as an issue, he had to become familiar with Walker's criminal history. What appellate counsel saw was an extensive record with more felony convictions than necessary to support a habitual offender finding. Thus, even though State's Exhibit 29 did not mention a commission date for the 1989 burglary, this omission was not significant and obvious from the face of the record. Rather, the only thing glaring from the record is that Walker had committed crime after crime after crime during his adult life.

With respect to the other raised issue, sufficiency of evidence supporting the robbery conviction, appellate counsel relied on the fact that Walker's victim could not positively

identify him as his attacker. In short, the unraised issue of sufficiency of evidence supporting the habitual offender finding was not clearly stronger than the issues raised by appellate counsel. Based on the foregoing, we conclude that Walker failed to demonstrate that his appellate counsel performed deficiently in this respect.

Finally, we reiterate that Walker's remaining ineffective assistance of appellate counsel claims essentially echo those asserted against his trial counsel. For the reasons previously explained herein, we find that, like trial counsel, appellate counsel did not provide ineffective assistance to Walker. Accordingly, we affirm.

Affirmed.

ROBB, C.J. and FRIEDLANDER, J., concur.