## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 15 2015, 10:11 am
CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Theron L. Bailey
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Theron L. Bailey,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 15, 2015

Court of Appeals Case No.
27A05-1404-PC-199

Appeal from the
Grant Superior Court

The Honorable Jeffrey D. Todd,
Judge

Cause Nos. 27D01-1007-PC-143 &
27D01-0703-FA-54

**Kirsch, Judge.**

[1] Theron L. Bailey was convicted of Class A felony attempted murder,[1] Class A felony kidnapping,[2] Class B felony criminal confinement,[3] two counts of Class C felony intimidation,[4] six counts of Class D felony pointing a firearm at another person,[5] Class A misdemeanor invasion of privacy,[6] and Class C felony carrying a handgun without a license.[7] Due to double jeopardy concerns, the trial court vacated four of his convictions and sentenced him to an aggregate sentence of 108 years in prison. Bailey now appeals the denial of his petition for post-conviction relief, raising the following consolidated and restated issue: whether his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective when, during voir dire, trial counsel did not thoroughly explore the potential bias of a juror.

[2] The post-conviction court did not err in finding that Bailey's appellate counsel provided effective assistance of counsel. We affirm.

---

[1] *See* Ind. Code § 35-41-5-1(a); Ind. Code § 35-42-1-1(1). We note that, effective July 1, 2014, a new version of the criminal statutes at issue was enacted. Because Bailey committed his crimes prior to July 1, 2014, we will apply the statutes in effect at the time he committed his crimes.

[2] *See* Ind. Code § 35-42-3-2(b)(2).

[3] *See* Ind. Code § 35-42-3-3(a)(2), (b)(2)(A).

[4] *See* Ind. Code § 35-45-2-1(a)(1), (b)(2).

[5] *See* Ind. Code § 35-47-4-3(b).

[6] *See* Ind. Code § 35-46-1-15.1(5).

[7] *See* Ind. Code §§ 35-47-2-1(a); 35-47-2-23(c).

# Facts and Procedural History

[3] This court's unpublished memorandum decision for Bailey's direct appeal provides us with facts and procedural history. *Bailey v. State*, 908 N.E.2d 712 (Ind. Ct. App. 2009). Rita Underwood ("Underwood") obtained a no-contact order against Bailey, her ex-boyfriend. Underwood worked at a diner in Marion, Indiana and lived in an apartment above the diner. On the night of March 3, 2007, Underwood and one of her sons, Dustin Cox ("Cox"), were in her apartment when Cox saw Bailey near the apartment. Bailey came to the door of the apartment, but Underwood was able to exit without Bailey noticing and went downstairs to the diner. Bailey searched Underwood's apartment and then searched the diner, where patrons were dining. Soon after, Underwood exited the restaurant, followed by Bailey and the diner's cook, Jesse Henry ("Henry"). As these events were occurring, Underwood's other son, Christopher Sherron ("Sherron"), arrived at the diner.

[4] Bailey and Underwood argued in the parking lot while her two sons and Henry looked on. Bailey pointed a handgun at Henry, and everyone stepped back. Bailey and Underwood struggled; meanwhile, the others urged Bailey to put away the gun, which Bailey later admitted he had no license to carry. Bailey then pointed his handgun at Henry, and everyone stepped back. Underwood walked back into the diner. Bailey followed her, and in front of witnesses, shot Underwood in the back of the head. Before fleeing the scene, Bailey pointed the gun at Cox and Sherron, asking them whether they wanted to die.

[5] A short time later, Bailey entered the Marion V.F.W. Hall and saw Charles Teegarden ("Teegarden"), a former co-worker. Teegarden agreed that, after he finished a game of pool, he would give Bailey a ride. Not satisfied by the delay, Bailey drew his gun, pointed it at Teegarden, and stated that he would shoot Teegarden if he did not immediately help him flee. Teegarden managed to escape from the situation, and Bailey left the hall.

[6] Bailey then approached a pub, outside of which he found a man named James Johnson ("Johnson") talking on his cell phone. Bailey pressed his gun into Johnson's chest and told him that he would shoot him in the head if Johnson did not agree to drive Bailey where he wanted to go. Johnson drove Bailey to a trailer court.

[7] Bailey was later arrested and charged with thirteen counts, including attempted murder, kidnapping, criminal confinement, invasion of privacy, carrying a handgun without a license, two counts of intimidation, and six counts of pointing a firearm. During voir dire at Bailey's jury trial, trial counsel, Don Gallaway ("Gallaway") asked a prospective juror ("Juror 4"), "Can you give [Bailey] the presumption of innocence even knowing the type of crime[s] with which he has been charged," to which Juror 4 said, "No." *Trial Tr.* at 57. Gallaway noted, "[B]eside[s] burden of proof an[d] reasonable doubt, the fundamental element of this process that we call a jury trial is fairness." *Id*. Gallaway then impressed on the prospective jurors, "if you can't be fair an[d] impartial then this may not be the case for you." *Id*.

[8] Gallaway asked the prospective jurors whether any of them had seen Bailey "in a little different light" after they heard "what he'd been accused of doing." *Id*. Only one juror, Webb, raised his hand and explained that when he heard about the case he "had an opinion immediately." *Id*. at 58. Webb was dismissed from the jury. Juror 4 was not moved to answer Gallaway's question and was placed on the jury.

[9] Approximately thirty witnesses testified on behalf of the State, at least six of whom had been present when Bailey shot Underwood. Testimony from those six witnesses revealed: Bailey had been banned from the diner and had been asked to leave on the night in question; patrons were in the diner at the time Underwood was shot; Underwood was afraid of Bailey; and Bailey had opened the door to the diner, raised his hand, and fired at Underwood. Bailey was one of only two witnesses to testify in his own defense. He claimed that he was drunk and high on the night in question and that the gun had accidentally fired.

[10] Outside the presence of the jury, the State argued that Bailey's opening statement had opened the door to evidence of prior bad acts. The trial court concluded that it would "allow evidence of prior acts of violence by the Defendant against the alleged victim, Rita Underwood, and Rita Underwood only." *Trial App*. at 23. Following the trial, Bailey was found guilty of all counts.

[11] Cognizant of double jeopardy concerns, the trial court later vacated four of the thirteen convictions and sentenced Bailey to an aggregate sentence of 108 years

in prison. On direct appeal, Bailey raised two issues: (1) whether the trial court committed fundamental error by admitting evidence regarding Bailey's prior convictions; and (2) whether trial counsel was ineffective for not objecting to the admission of the prior convictions. This court affirmed Bailey's convictions, finding that Bailey had failed to establish that the admission of the evidence concerning two previous convictions constituted fundamental error. Additionally, this court concluded that trial counsel was not ineffective for failing to object to the admission of this evidence.

[12] Bailey filed a pro se petition for post-conviction relief in July 2010, but withdrew his petition in July 2012. Again, acting pro se, Bailey filed an amended petition for post-conviction relief on August 22, 2013. In this petition, Bailey claimed that his appellate counsel was ineffective, among other reasons, for failing to include in his ineffective assistance of trial counsel claim – raised on direct appeal – that trial counsel was also ineffective for failing to question Juror 4 regarding his potential bias against Bailey.

[13] At Bailey's request, the post-conviction court admitted Petitioner's Exhibit A – the record of proceedings from trial, including the transcript. *PCR Tr.* at 6. Bailey was unable to have his appellate counsel, Robert Bratch ("Bratch"), testify at the February 14, 2014 post-conviction hearing because Bratch had died prior to that date. Instead, Bailey called Gallaway to testify. On March 18, 2014, the court issued its findings of fact and conclusions thereon, denying Bailey's petition for post-conviction relief.

[14] The post-conviction court found that Gallaway met Bailey at the county jail to discuss trial strategy and possible defenses. *PCR Ruling* at 5.[8] Gallaway conducted discovery and shared that discovery with Bailey, and while Gallaway took no depositions, he reviewed witness statements received from the State during discovery. *Id.* Furthermore, the record at trial reflected that Gallaway filed a motion in limine to exclude Bailey's prior criminal history and a motion to bifurcate count 12 to be heard with the enhancement on count 13. Gallaway argued in favor of the motions, made an opening statement, cross examined the State's witnesses, questioned Bailey (after Bailey decided to testify), and made a closing argument. Specifically addressing Bailey's claim that Gallaway failed to adequately question Juror 4 during voir dire, the post-conviction court found that Gallaway had no recollection of such a hostile juror, and Bailey presented no evidence to support his claim that Juror 4 was biased against him.[9] The post-conviction court concluded that "Bailey wholly failed to demonstrate that his trial counsel, Don Gallaway, was ineffective." *PCR Ruling* at 7. The post-conviction court also concluded that Bailey did not prove that appellate counsel Bratch was ineffective when he failed to claim that

---

[8] A copy of the post-conviction court's findings of fact and conclusions thereon, denying Bailey's request for post-conviction relief, is included in the back of the Appellant's Brief; however we do not find a copy of this document in the Appellant's Appendix. Therefore, for ease of reference, we will refer to the post-conviction court's ruling merely as "*PCR Ruling*."

[9] The post-conviction court also found that Bailey presented no evidence to support his contention that Gallaway was ineffective because he did not object to the court's use of remorse as an aggravating factor during sentencing. *PCR Ruling* at 5. Bailey does raise this issue on appeal.

Gallaway's improper inclusion of Juror 4 was ineffective assistance of trial counsel. Bailey now appeals.

## Discussion and Decision

Bailey has the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner appealing from the denial of post-conviction relief stands in the position of one appealing from a negative judgment. *Soucy v. State*, 22 N.E.3d 683, 685 (Ind. Ct. App. 2014). Thus, the decision will be disturbed as being contrary to law only if the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id*. Ineffectiveness of counsel claims are evaluated under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show both *deficient performance* and *resulting prejudice*. *Brown v. State*, 880 N.E.2d 1226, 1230 (Ind. Ct. App. 2008) (citing *Strickland*, 466 U.S. at 687), *trans. denied* (emphasis added).

Bailey first contends that his trial counsel was ineffective when, during voir dire, trial counsel did not question Juror 4 regarding his possible prejudice against Bailey and strike the juror from the jury.[10] *Appellant's Br*. at 7. The State

___

[10] We note that in his amended petition for post-conviction relief, which was filed on August 22, 2013, Bailey claimed ineffective assistance of *appellate counsel* and judicial *fundamental error* as the only grounds for granting post-conviction relief. *Appellant's Supp. App.* at 4, 12, 13. During the post-conviction hearing – likely due to the unavailability of appellate counsel – Bailey's questioning focused on the actions of Gallaway as trial counsel. The post-conviction court concluded that Bailey had failed to demonstrate that either his trial

argues that Bailey is barred from asserting this claim because he raised an ineffective assistance of trial counsel claim in his direct appeal. We agree. Our Supreme Court addressed this issue in *Woods v. State*, 701 N.E.2d 1208 (Ind. 1998), *Ben-Yisrayl v. State*, 738 N.E.2d 253, 259 (Ind. 2000), and, again, in *Timberlake v. State*, 753 N.E.2d 591, 602 (Ind. 2001). The Supreme Court held that "once the defendant chooses to raise his claim of ineffective assistance of trial counsel (either on direct appeal or post-conviction), he must raise all issues relating to that claim, whether record-based or otherwise." *Timberlake*, 753 N.E.2d at 602 (citation omitted). Accordingly, a defendant who chooses to raise on direct appeal a claim of ineffective assistance of trial counsel is foreclosed from relitigating that claim. *Id.*; *see also Bieghler v. State*, 690 N.E.2d 188, 200-01 (Ind. 1997) ("Some of the [defendant's arguments on post-conviction appeal] are new arguments about aspects of trial counsel's performance we considered on direct appeal; others focus on aspects not mentioned earlier. In either case, the earlier ruling that trial counsel was not ineffective is res judicata."). On direct appeal, Bailey raised, and this court considered and rejected, a claim of ineffective assistance of trial counsel. Res judicata thus bars him from relitigating this issue in post-conviction proceedings. *Timberlake*, 753 N.E.2d at 602.

---

counsel or appellate counsel was ineffective. *PCR Ruling* at 7, 8. On appeal, Bailey challenges both of those conclusions.

[17]     A petitioner, however, can claim that appellate counsel was ineffective for failing to properly raise and support deficient performance of trial counsel. *Sweeney v. State*, 886 N.E.2d 1, 7 (Ind. Ct. App. 2008) (citing *Timberlake*, 753 N.E.2d at 606), *trans. denied*. The standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Walker v. State*, 988 N.E.2d 1181, 1190 (Ind. Ct. App. 2013), *trans. denied*. The petitioner must establish deficient performance by appellate counsel resulting in prejudice. *Id.*

> Deficient performance is representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment. We assess counsel's performance based on facts that are known at the time and not through hindsight. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. Prejudice occurs when a reasonable probability exists that, but for counsel's errors the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 1186 (citations and internal quotation marks omitted).

[18]     Here, Bailey maintains that his appellate counsel was ineffective when he did not raise on direct appeal that trial counsel was not effective because he failed to properly question Juror 4 regarding whether that juror harbored possible prejudice against Bailey, which prejudice allegedly compromised the verdict

and resulted in fundamental error.[11]  "In evaluating whether appellate counsel performed deficiently by failing to raise an issue on appeal, we apply the following test:  (1) whether the unraised issue is significant and obvious from the face of the record and (2) whether the unraised issue is 'clearly stronger' than the raised issues." *Walker*, 988 N.E.2d at 1191.  Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.  *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006).

[19]  Bratch died before the post-conviction hearing; therefore, he was unavailable to testify regarding why he raised the issues he did, instead of raising issues concerning Juror 4's potential prejudice.  Gallaway testified at the post-conviction hearing; however, he was unable to recall his conversation with Juror 4.  Therefore, to evaluate Bratch's representation of Bailey on direct appeal, we look for guidance in Petitioner's Exhibit 1 to the post-conviction hearing, the transcript of Bailey's trial.  In particular, we examine the voir dire.

[20]  To determine which issues would be most likely to succeed and thus should be raised on direct appeal, Bratch would have had to review the trial transcript,

---

[11] In his petition for post-conviction relief, Bailey claimed that appellate counsel was ineffective for failing to raise claims of Gallaway being ineffective when he did not:  (1) question Juror 4 regarding bias; (2) prepare adequately for trial; (3) call certain defense witnesses; (4) request a speedy trial; and (5) object to the trial court using lack of remorse as an aggravating factor for sentencing.  *Appellant's Supp. App.* at 15, 16, 19, 35, 40, 42.  On appeal, Bailey only raises his concerns regarding Juror 4.

including the voir dire. "'The purpose of voir dire is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence.'" *Gregory v. State*, 885 N.E.2d 697, 706 (Ind. Ct. App. 2008) (quoting *Joyner v. State,* 736 N.E.2d 232, 237 (Ind. 2000)), *trans. denied.* "[S]uch examination of prospective jurors is used to discover whether a prospective juror has any opinion, belief, or bias [that] would affect or control his determination of the issues to be tried, providing a basis to exercise the right of challenge either peremptory or for cause." *Id.* "[P]roper examination may include questions designed to disclose the jurors' attitudes about the type of offense charged." *Id.* at 707. Biased jurors may be removed for cause. *Whiting v. State*, 969 N.E.2d 24, 29 (Ind. 2012). Additionally, "state law provides defendants with a limited number of peremptory challenges, I.C. § 35-37-1-3; Ind. Jury Rule 18, which they may use to excuse jurors for almost any reason." *Id.* For the crimes committed by Bailey, Gallaway should have had ten peremptory challenges. Ind. Code § 35-37-1-3(b) (2006).

[21]   Here, the transcript of the voir dire proceedings revealed the following regarding Juror 4's potential bias. Juror 4 said that he would be open-minded and listen to the evidence on both sides. *Trial Tr.* at 43. He also said that he understood part of his job as a juror would be to assess the credibility of witnesses, and he stated that he was up to the task. *Id.* at 44. Juror 4 said that he would watch the demeanor of each witness to determine by their body language whether they were telling the truth. *Id.*

Gallaway and Juror 4 acknowledged that they knew each other. Gallaway stated, "Nobody here indicated that they knew [Bailey], correct? Can you give him the presumption of innocence even knowing the type of crime with which he's been charged?" *Trial Tr.* at 57. Without elaboration, Juror 4 simply said "No." Gallaway continued,

> Saying that you know what I am not gonna pass judgment on you until I've heard it all. Can each one of you do that? Anyone here say you know what I don't know. I heard the charges an[d] then jus[t] hearing an[d] you haven't heard the details yet. Just hearing the charges caused me kinda inside kinda gasp a little bit an[d] all the sudden [sic] you look at [h]im in a little different light. How many of you did that? Came in here an[d] saw Theron sittin[g] here, but then heard the charges an[d all the sudden maybe [] you saw him in a different light after you'd heard what he'd been accused of doing. Anybody? An[d] it's okay if you did. Because . . . beside burden of proof an[d] reasonable doubt the fundamental element of this process that we call jury trial is fairness. An[d] if you can't be fair an[d] impartial then this may not be the case for you. Okay an[d] we need t[o] know that. I will get as transparent and open with you, buy [sic] in turn we need you t[o] do the same with us, okay? Can anybody say that [] hey you know what when we were all sittin[g] here I saw [h]im one way, but then [] when I heard what he'd been charged with I kinda saw [h]im [in a] different way. Nobody? . . . .

*Trial Tr.* at 57-58.

Juror 4 did not raise his hand in response to Gallaway's question. Potential juror Webb, however, did raise his hand and explained that when he heard about the case he "had an opinion immediately in [his] mind." *Id.* at 58. When asked, Webb confirmed that he still carried that opinion. *Id.* Gallaway specifically asked Webb, "Do you think you can be fair? Having read what

you've read an[d] know what you known can you be fair an[d] give him a fair trial?" *Id.* at 59. Webb answered that he was not sure. *Id.* Gallaway moved to strike Webb for cause. *Id.* at 60. Thereafter, Webb said he thought he could wait to make up his mind regarding guilt until he had heard all of the evidence. *Id.* at 61. Gallaway withdrew his motion to strike Webb for cause. While it is not clear whether defense counsel or the State challenged Webb as a juror, he was dismissed from the jury. After Juror 4 confirmed that his familiarity with Gallaway would not in any way affect his ability to be a juror, Juror 4 remained on the jury. *Id.* at 70, 73.

[24] Appellate counsel's performance is presumed effective. Here, Bailey has not offered strong and convincing evidence to overcome this presumption. The record supported that Gallaway intensively questioned each potential juror, including Juror 4. During voir dire, about twenty-four potential jurors were dismissed from the jury pool. Some were dismissed for cause and others by preemptory challenge. Gallaway, himself, used at least seven preemptory challenges – an amount that the prosecutor characterized as "a lot." *Trial Tr.* at 119.[12] Gallaway was clearly concerned about the fairness of trial and removed from the jury any individual that he believed would not provide Bailey with a fair trial. We cannot say that Bailey has met his burden of proving that Bratch

---

[12] During voir dire, Gallaway asked the court, "[C]ould you please give me a count on my strikes?" The trial court told Gallaway that he had three strikes left, to which the State prosecutor responded, "You mean you've used seven (7)? That's a lot." *Trial Tr.* at 119.

was ineffective for failing to raise on direct appeal the ineffectiveness of Gallaway for not more fully questioning or striking Juror 4 from the jury pool.

[25] Further, even if we were to find that Bratch was ineffective for not raising on direct appeal the ineffectiveness of Gallaway for failing to remove Juror 4 from the jury pool, no prejudice resulted. The evidence against Bailey was overwhelming. Witnesses testified that Underwood had a no-contact order against Bailey, Bailey went to Underwood's apartment to find her, he followed her to the diner, the two struggled while Bailey was in possession of a gun, Bailey followed Underwood back into the diner, and when he was a couple of feet away from her, he pointed the gun at head and fired. *Trial Tr.* at 147-50, 218-19, 240-41. Witnesses also testified as to the events surrounding the other charged crimes. In his defense, Bailey testified that he did not mean to shoot Underwood, that it was an accident. Bailey admitted that he pointed his handgun at Henry; however, he claimed that it was in self-defense. As to the other crimes, Bailey claimed to have no memory about what happened. Approximately thirty witnesses testified on behalf of the State, at least six of whom had been present when Bailey shot Underwood. The jury believed that the shooting of Underwood was intentional. Additionally, in the absence of any defense except that Bailey could not remember, the jury believed that Bailey had committed each of the remaining charged crimes. Prejudice occurs when a reasonable probability exists that, but for counsel's errors the result of the proceeding would have been different. We find no prejudice caused by the inclusion of Juror 4.

Here, Bailey failed to prove either that appellate counsel was deficient or that such deficiency resulted in prejudice. Finding that Bailey did not receive ineffective assistance of appellate counsel, we affirm the post-conviction court's denial of Bailey's petition.

Affirmed.

Vaidik, C.J., and Bradford, J., concur.