**Ronald SHANABARGER,**
**Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–**
**Respondent.**

No. 41A05–0508–PC–452.

Court of Appeals of Indiana.

May 3, 2006.

Transfer Denied May 25, 2006.

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Ronald L. Shanabarger appeals from the denial of his petition for post-conviction relief, challenging the effectiveness of his trial counsel. Specifically, Shanabarger contends that his trial attorneys were ineffective because they: (1) failed to adequately respond to an instance of juror misconduct; (2) improperly permitted Shanabarger's sister and brother-in-law to visit him in jail; (3) failed to object to the modification of a tendered instruction that the trial court gave regarding Shanabarger's confessions; and (4) failed to object to a confession that he made to the police chaplain. Concluding that Shanabarger has failed to establish the ineffectiveness of his trial counsel, we affirm the judgment of the post-conviction court.

### FACTS

The facts, as reported in Shanabarger's direct appeal, are as follows:

On June 20, 1999, the Franklin Police Department responded to a call at Amy and Ronald Shanabarger's residence after Amy discovered that their seven-month-old son, Tyler, had died in his crib. Tyler's body was eventually transferred to the Indiana University Medical Center where an autopsy was performed the following day. The pathologist, Dr. Michael Clark, initially determined that Tyler's death was consistent with Sudden Infant Death Syndrome (SIDS).

Shortly after Tyler's funeral, however, Shanabarger admitted to Amy that he had killed the child by wrapping his head in plastic wrap and suffocating him. Shanabarger then went to the Johnson County Sheriff's Office and told several detectives that he had killed Tyler. Shanabarger explained that he killed the child as an act of revenge against Amy for refusing to return from a vacation to attend his father's funeral. On June 24, 1999, Shanabarger was formally charged with the murder. Shanabarger then gave two taped statements to the police admitting that he had killed Tyler.

Shanabarger also met with Reverend Mark Maynard, the police chaplain. Prior to their conversations, Reverend Maynard informed Shanabarger that any statements made to him would not be confidential and further stated that he would recount their conversation to the detectives. Notwithstanding such a warning, Shanabarger admitted to Reverend Maynard that he had killed Tyler by wrapping cellophane or plastic wrap around his head and suffocating him.

While Shanabarger was awaiting trial, his court-appointed counsel, Richard Tandy, arranged a visit between Shanabarger, his sister Benita and his brother-in-law, Larry Savage (the Savages). Tandy told Shanabarger that anything he told the Savages would not be considered privileged communication. Nonetheless, Shanabarger revealed to them that he killed Tyler. He also acknowledged that Amy was not involved and further stated that he waited until Tyler was old enough to roll over so it would appear as a SIDS death.

Shanabarger wrote a number of letters to Amy from prison admitting that he killed Tyler, and he again told his relatives that he had committed the crime as well as how he did it. In light of these confessions and statements, the police seized three pieces of cellophane wrap that were found in Shanabarger's yard. Those samples were compared with various creases and anomalies that were noted on photographs of Tyler. The State, however, did not disclose those test results to Shanabarger in accordance with the trial court's discovery order. To the contrary, the existence of the comparison was not provided to Shanabarger until after the State had presented its case-in-chief. After DNA tests had been performed on the materials, a pathologist concluded that the cause of Tyler's death was non-specific asphyxia and that the manner of death was undetermined. At the trial, Tandy testified as to some of the statements that Shanabarger had made to his sister and brother-in-law during the jail visit, including the possibility that he would plead guilty to the murder so the State would forgo seeking the death penalty. At the conclusion of a nine-day jury trial on May 8, 2002, Shanabarger was found guilty as charged.

*Shanabarger v. State*, 798 N.E.2d 210, 213–14 (Ind.Ct.App.2003), *trans. denied.*

On direct appeal, Shanabarger raised the following issues: (1) his confessions should have been suppressed because the State had failed to establish the corpus delicti of the offense; (2) the trial court erred in permitting his originally-appointed counsel to testify regarding conversations that occurred between Shanabarger and the Savages; (3) the trial court erred in allowing the testimony of Randy Maynard in violation of the clergyman privilege; (4) the trial court erred in refusing to grant his motion for a mistrial because exculpatory evidence had not been disclosed to him in a timely manner; and (5) the trial court erred in interviewing a juror outside the presence of defense counsel. We affirmed Shanabarger's conviction in all respects. *Id.* at 219–20.

On February 26, 2004, Shanabarger filed a pro se petition for post-conviction relief, and the State Public Defender filed an amended petition on March 28, 2004. In addition to the claims of error set forth above, Shanabarger alleged in the pro se petition that he was entitled to relief because trial counsel: (1) did not adequately prepare for trial; (2) failed to object to the introduction of Shanabarger's letters that he had written to his wife in violation of the *corpus delicti* rule; and (3) failed to preserve insanity and mental retardation defenses.

At the post-conviction hearing that commenced on May 2, 2005, an alternate juror—John Dalton—testified that he was involved in an exchange with the trial judge regarding an alleged claim by Shanabarger that he had tried to plead guilty. Dalton testified that he had heard another juror—Ron Bible—state, on the first day of trial, that Shanabarger had attempted to plead guilty. Dalton responded, "That's not true." PCR Tr. p. 20. Dalton

did not remember if any of the other jurors actually heard the comments. Additionally, Jay Hoffman and Jennifer Auger, Shanabarger's trial attorneys, both testified that they were present during the exchange between the trial judge and Dalton. Auger remembered the judge strongly admonishing Dalton for being late, and Hoffman recalled that the judge had admonished one of the male jurors. However, neither Auger nor Hoffman remembered hearing anything about a juror indicating that Shanabarger had tried to plead guilty.

Following the hearing, the post-conviction court denied Shanabarger's request for relief. In the order denying relief, the post-conviction court determined that the following issues were barred on res judicata grounds because they had already been decided in Shanabarger's direct appeal: (1) trial counsel failed to protect the attorney-client privilege in light of the conversations that Shanabarger had with the Savages; (2) trial counsel was ineffective for failing to object to the admission of Shanabarger's letters that he had written to his wife; and (3) trial counsel unreasonably invited a confession from Shanabarger in the presence of third parties.

The post-conviction court went on to address the remaining issues on their merits, concluding that Shanabarger failed to meet his burden of proof and that he "was more than adequately represented by competent counsel who spent an inordinately large amount of time in the defense of this case." Appellant's App. p. 81. Shanabarger now appeals.

## DISCUSSON AND DECISION

### I. Standards of Review

#### A. Post–Conviction Proceedings

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *McCarty v. State*, 802 N.E.2d 959, 962 (Ind.Ct.App.2004), *trans. denied.* When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Post-conviction procedures do not afford petitioners with a "super appeal." *Richardson v. State*, 800 N.E.2d 639, 643 (Ind.Ct.App.2003), *trans. denied.* Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based upon grounds enumerated in the post-conviction rules. *Id.; see also* P–C.R. 1(1).

In general, freestanding claims of error are not available in a post-conviction proceeding because of the doctrines of waiver and res judicata. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind.2001). If an issue was known and available but not raised on direct appeal, it is waived by procedural default. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind.2002). Similarly, if an issue was raised on appeal, but decided adversely, it is res judicata. *Timberlake*, 753 N.E.2d at 597. And a claim of ineffective assistance of counsel is properly presented in a post-conviction proceeding if it was not raised on direct appeal. *Id.*

### B. Ineffective Assistance of Counsel

When evaluating Shanabarger's claims of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind.Ct.App.2003). First, the defendant must

show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052 and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *See id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs announced in *Strickland* are independent inquiries, and a claim may be disposed of on either prong. *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999).

We also note that counsel is afforded wide discretion in determining strategy and tactics, and therefore courts will accord these decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *Stevens v. State*, 770 N.E.2d 739, 747 (Ind.2002). We will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998). When a claim of ineffective assistance of counsel is based on the failure to object, the defendant also must show that a proper objec-

tion would have been sustained. *Smith v. State*, 765 N.E.2d 578, 585 (Ind.2002).

### II.   Shanabarger's Claims

■ Before proceeding to the merits of Shanabarger's claims, we again note that the post-conviction court determined that a number of Shanabarger's alleged claims of error were barred on the grounds of res judicata. However, our review of the record reveals that the precise issues raised here were not presented on direct appeal. Moreover, inasmuch as Shanabarger has framed his arguments in terms of ineffective assistance of counsel claims and has not presented them as freestanding claims of error, we proceed to dispose of those issues on the merits. *See Timberlake*, 753 N.E.2d at 597 (holding that a claim of ineffective assistance of counsel is properly presented in a post-conviction proceeding if it was not presented on direct appeal).

### A.   Trial Counsel's Failure to Respond to Juror Misconduct

■ Shanabarger contends that he received the ineffective assistance of trial counsel because no motion for mistrial was made after Dalton, the alternate juror, made statements to the effect that Shanabarger had desired to plead guilty at an earlier stage of the proceedings. In essence, Shanabarger argues that the evidence presented at the post-conviction hearing proved that trial counsel's failure to request a mistrial or ask that Dalton be removed from the jury panel was so prejudicial that it placed him in a position of grave peril.

■■ While the general rule is that a jury's verdict may not be impeached by the testimony of the jurors who returned it, an exception to this rule occurs when there is evidence demonstrating that the jury was exposed to improper, extrinsic

material and a substantial possibility exists that the defendant was prejudiced by that material. Ind. Evidence Rule 606(b)(2); *Allen v. State,* 749 N.E.2d 1158, 1164 (Ind. 2001). By the same token, trial counsel's conduct with respect to his performance at trial is assessed based on facts that are known at the time and not through hindsight. *Brown v. State,* 691 N.E.2d 438, 446 (Ind.1998).

■ In this case, both of Shanabarger's trial attorneys testified that while they heard the trial court admonishing Dalton, neither one of them heard anything regarding a guilty plea. PCR Tr. p. 60, 104. Specifically, Auger testified that she believed that the exchange only concerned Dalton's tardiness at the trial. *Id.* at 104. It was only during Dalton's testimony at the post-conviction hearing that Shanabarger's attorneys became aware of the nature of the substance of the colloquy. Hence, trial counsel's only "mistake"—if any—was the failure to listen more closely to the exchange between Dalton and the trial judge. In our view, such inaction in this instance does not amount to deficient performance on the part of trial counsel. Moreover, Dalton testified that he responded to another juror's comment about Shanabarger trying to plead guilty by stating that he did not believe such a statement was true. As a result, Shanabarger has failed to show whether any of the jurors actually believed that he had tried to plead guilty at an earlier stage of the proceedings. Therefore, Shanabarger has failed to prove that he was prejudiced by any of the jurors' comments, and his ineffective assistance of trial counsel claim fails with regard to this issue.

### B. Jail Visits from Shanabarger's Sister and Brother–in–Law

Shanabarger also argues that his trial counsel was ineffective with regard to his sister and brother-in-law's visits with Shanabarger at the jail. More specifically, Shanabarger claims that his original trial counsel, Richard Tandy, was ineffective because he was acting under the erroneous belief that any statements Shanabarger made to his relatives would not be admissible at trial because they were protected by the attorney-client privilege. Thus, Shanabarger contends that he is entitled to post-conviction relief because the confession that he made to the Savages regarding Tyler's death was admitted at trial.

■ Contrary to Shanabarger's contentions, the record shows that the Savages both testified that Tandy had conveyed to Shanabarger at the beginning of their visit that anything Shanabarger told the Savages was *not* privileged communication, and that they could "repeat anything you say." Tr. p. 1347, 1406. Moreover, even if it could be assumed that Tandy's act of permitting Shanabarger to meet with the Savages and talk with them about the circumstances of Tyler's death amounted to deficient performance, the record also indicates that Shanabarger admitted to the Savages on occasions other than the visits at the jail that he had killed Tyler. Tr. p. 1345, 1396. As noted above, Shanabarger also admitted that he killed Tyler in the statements that he made to the police, to the jail clergyman, and in the letters he had written to his former wife. *Id.* at 752, 836–39. Therefore, any error that Tandy might have committed in arranging the meeting between Shanabarger and the Savages did not prejudice Shanabarger in view of the other admissions of guilt. Hence, Shanabarger's claim of ineffective assistance of counsel with respect to this issue fails.

### C. Failure to Object to Instruction

■ Shanabarger also argues that his trial counsel was ineffective for failing to

properly object to a modified jury instruction regarding the effect of a defendant's confession. Specifically, Shanabarger claims that his trial counsel's objection that the modified instruction as given was a "mandatory instruction," was incorrect. Appellant's Br. p. 19. Thus, Shanabarger claims that his trial counsel should have objected for the reason that the modified instruction prevented him from presenting a defense.

In considering Shanabarger's arguments as to whether his trial counsel should have lodged an objection other than the one that was made at trial, it has been held that instructing the jury lies within the sole discretion of the trial court, and considering the instructions as a whole and in reference to each other, we will not reverse for an abuse of discretion unless the instructions as a whole mislead the jury as to the law in the case. *Carter v. State,* 766 N.E.2d 377, 382 (Ind.2002).

Following the presentation of evidence, Shanabarger tendered the following instruction:

> Confessions, even those found to be voluntary, *are not* conclusive of guilt. And, as with any other part of the State's case, a confession may be shown to be insufficiently corroborated or otherwise unworthy of belief.

Appellant's App. p. 108 (emphasis added). This instruction was then modified and given to the jury as follows:

> Confessions, even those found to be voluntary, *may be* conclusive of guilt. And, as with any other part of the State's case, a confession may be shown to be insufficiently corroborated or otherwise unworthy of belief.

Appellant's App. p. 107 (emphasis added). In addition to the modified instruction as given, the trial court also instructed the jury that it was the sole judge of the credibility of the witnesses and that it was free to believe or disbelieve a confession. Appellant's App. p. 79–80. Here, it is apparent that the jury found Shanabarger's confessions to be credible, inasmuch as it ultimately found Shanabarger guilty of murder. In our view, the trial court's decision to change the wording of this instruction did not affect this determination. Put another way, Shanabarger has failed to show that he would have prevailed had his trial counsel objected to the modified instruction on grounds other than those that were actually raised. And he has not demonstrated that this instruction precluded him from presenting a defense at trial. As a result, Shanabarger's claim of ineffective assistance of counsel on this issue fails.

### D. Shanabarger's Confession to Jail Chaplain

Finally, Shanabarger contends that his trial counsel was ineffective for failing to object to jail chaplain Randy Maynard's testimony. Specifically, Shanabarger maintains that his attorney should have objected because the confession that Shanabarger conveyed to Reverend Maynard amounted to a violation of the rule announced in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Miranda,* the United States Supreme Court held that a defendant's statements stemming from custodial interrogation may not be used against him at trial unless the State demonstrates that, prior to any questioning, the defendant was warned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 445, 86 S.Ct. 1602. Our Supreme Court has determined that a waiver of the rights afforded under *Miranda* occurs when the defendant, after being advised of those

rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. *Ringo v. State,* 736 N.E.2d 1209, 1211–12 (Ind.2000). Additionally, a re-advisement of the *Miranda* warnings is only necessary when the interruption deprived the suspect of an opportunity to make an informed and intelligent assessment of his interests. *Ogle v. State,* 698 N.E.2d 1146, 1149 (Ind.1998).

▇ In this case, the record demonstrates that Reverend Maynard spoke with Shanabarger shortly after he had been informed of the *Miranda* rights by police officers. Specifically, three days after the murder, Shanabarger and his wife went to the Johnson County Sheriff's Office and informed the individual at the front desk that "he killed [his] son." Tr. p. 752. Shanabarger repeated this statement after a detective had been summoned. Tr. p. 836, 838–39. Another detective was brought in, and Shanabarger stated that he placed plastic wrap on his son's face and smothered him to death to avenge his wife's failure to attend his father's funeral. *Id.* at 840. Shanabarger then signed two waiver of rights forms and provided two taped statements to the police admitting that he had killed Tyler with plastic wrap to make it appear as though the boy died of SIDS. State's Ex. 11–14. Shanabarger was arrested for Tyler's murder, and shortly thereafter, he met with Reverend Maynard. Tr. p. 870, 897, 915. At the beginning of the meeting, Reverend Maynard told Shanabarger that their conversation was not confidential, and that he would tell the police what Maynard said. Tr. p. 916. Shanabarger then told Maynard that he killed Tyler by wrapping plastic around his head. Tr. p. 917–18.

▇ Given these circumstances, and even assuming that Maynard was acting as a state agent at the instigation of the police,[1] it was not necessary for Maynard to repeat the *Miranda* warnings. *See Ogle,* 698 N.E.2d at 1149. It is apparent that Reverend Maynard spoke to Shanabarger just after Shanabarger had received two separate *Miranda* warnings. He waived his rights on both occasions and rendered two confessions admitting that he had killed Tyler. As a result, Shanabarger has failed to show that any interruption before speaking with Reverend Maynard deprived him of the opportunity to assess his interests before that meeting took place. Hence, Shanabarger has failed to show that an objection by his trial counsel on the grounds that the rule announced in *Miranda* was violated would have been sustained. Therefore, Shanabarger has failed to show that his trial counsel's performance was deficient on this basis. Moreover, Shanabarger has failed to demonstrate that he was prejudiced by the failure to object in light of the taped confessions that he had given to the police, his admissions to killing Tyler that he had made in various letters he had sent to his wife, and the admissions that he had made to the Savages that were admitted into evidence. Therefore, Shanabarger's claim of ineffective assistance of trial counsel fails.

The judgment of the post-conviction court is affirmed.

MAY, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur as to Parts I.A. and B. I also concur as to Parts II. A., B., and D. With

---

1. It is not clear from the record whether the two met at Shanabarger's request or at the instigation of police detectives.

respect to Part II. C., I also concur but do so with a caveat.

I agree that the instruction as given was not a mandatory instruction. It did not direct the jury to conclude that the confession or confessions were conclusive of guilt. Rather the instruction left that assessment up to the jury.

Furthermore, the instruction as given did not prevent Shanabarger from interposing his *corpus delicti* defense. He did in fact assert that defense and argued it in his direct appeal. Neither did the instruction preclude Shanabarger's defense that the child died of SIDS. That claim was made by Shanabarger.

Be that as it may, it is my belief that the form in which the instruction was tendered by Shanabarger was representative of his theory of the case presented to the jury. It correctly stated the applicable law in that it advised the jury that whether voluntary or not, such confessions "are not conclusive" of guilt. The thrust of the instruction, as tendered, was more favorable to the defendant's theory of the weight to be given confessions than was the instruction as given. As given, the instruction leaned a bit more to the permissible conclusion that the confessions were conclusive of guilt rather than to the contrary conclusion as contained in the tendered instruction.

Although I am of the view that the trial court would have been better advised to give Shanabarger's instruction as tendered, in light of the post-conviction arguments made against the instruction as given, I do not see cause for reversal.