

**FILED**

Mar 14 2017, 8:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Borahm Kim
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Lindsey,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

March 14, 2017

Court of Appeals Case No.
71A04-1412-PC-576

Appeal from the St. Joseph
Superior Court

The Honorable John M.
Marnocha, Judge

Trial Court Cause No.
71D02-1105-PC-22

**Baker, Judge.**

[1] Michael Lindsey appeals the judgement of the post-conviction court, which denied his petition for post-conviction relief (PCR). He argues that he received the ineffective assistance of trial counsel, who advised him to reject a plea agreement with a thirty-two-year sentence on the grounds that the most he could receive with an open guilty plea was thirty years; instead, he received forty. We find that trial counsel's performance was ineffective and that Lindsey was prejudiced thereby. Accordingly, we reverse the judgment of the PCR court and remand with instructions to adjust Lindsey's sentence to thirty-two years.

## Facts

[2] On February 24, 2009, at around 1:00 p.m., Lindsey approached a woman in the parking lot of a Hobby Lobby. Lindsey had been free from prison for only seven months after serving a twenty-six-year sentence for rape and child molesting. Armed with a screw driver and nervous that his parole officer was after him, he attempted to force the woman to drive him out of the county. She screamed and was able to get away, and Lindsey fled the scene.

[3] Lindsey went home, where he grabbed money and a kitchen knife. He walked to a bank and withdrew more money. As he attempted to contact a taxi, he noticed several police officers walking around, and he became afraid that they were looking for him. He ducked behind a nearby building. Noticing a woman entering her car, he walked up to her car, showed her the knife, and forced her to drive him away. Several hours later, Lindsey had a change of heart: he let

the second woman go—in the middle of nowhere, without her car—and he was later arrested. This second encounter began around 3:00 p.m.[1]

[4] The State charged Lindsey with attempted criminal confinement and criminal confinement, both class B felonies. Each charge carried a sentence of between six and twenty years. Ind. Code § 35-50-2-5 (2009). Lindsey came to an agreement with the State to plead guilty to the offenses in exchange for a thirty-two-year sentence, which would be eight years shorter than the forty-year maximum sentence he faced.

[5] The parties had the agreement completely written out, but at the last minute, Lindsey changed his mind. He later claimed that his trial counsel assured him that his two crimes were part of a single episode of criminal conduct. If this were the case, then Lindsey's "total of the consecutive terms of imprisonment . . . [could] not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted," Ind. Code § 35-50-1-2(c) (2009), which would have been thirty years in Lindsey's case. I.C. § 35-50-2-4(a). His trial counsel, while never conceding that he absolutely promised that Lindsey could only receive a maximum of thirty years, did later testify to that effect: "It was my opinion that

---

[1] There is a discrepancy in the amount of time that passed; Lindsey has also testified that, in his estimation, a half-hour to an hour separated the events.

it was a continuing criminal scheme or plan, because the one attempt was within a half an hour of the actual taking of the person." PCR Tr. p. 9.

[6] Regardless, the parties modified by hand the plea agreement to exclude the thirty-two-year sentence and to be an open plea of guilty, leaving sentencing to the trial court's discretion. The trial court informed Lindsey that the determination of whether his conduct was part of a single episode would be fact-sensitive, and that he faced a maximum of forty years; Lindsey stuck with his open guilty plea.

[7] At the sentencing hearing, the State pointed out that the incidents took place two hours apart, with different weapons, with different victims, and that Lindsey went home and to the bank in between. Accordingly, the trial court found that the conduct was not part of a single episode. After noting a significant criminal history and the terror that his victims felt, the trial court sentenced Lindsey to the maximum sentence of twenty years on each conviction, to be served consecutively.

[8] Lindsey appealed, arguing (1) that the trial court erred by finding that he committed multiple criminal episodes, and (2) that his sentence was inappropriate, but we affirmed in a memorandum decision. *Lindsey v. State*, No. 71A03-0910-CR-486, 2010 WL 1526552, at *1 (Ind. Ct. App. Apr. 16, 2010).

[9] Lindsey filed a petition for PCR, arguing that his trial counsel provided ineffective assistance by persuading him to scrap the plea bargain reached with

the State, and that trial counsel's alleged misinformation meant that his guilty plea was not knowing, voluntary, and intelligent. After listening to testimony and argument, the PCR court denied Lindsey's petition. It found that Lindsey and his trial counsel had decided to make an open plea in the hope that this would result in a thirty-year sentence. It also found that Lindsey could not show that he had suffered any prejudice because he would have pleaded guilty regardless.

[10] Lindsey appealed the PCR court's decision, but we affirmed in a memorandum decision. *Lindsey v. State*, No. 71A04-1412-PC-576, 2015 WL 5545481, at *1 (Ind. Ct. App. Sep. 21, 2015) (*Lindsey II*). Using a standard derived from *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001), we agreed with the PCR court that to prove prejudice Lindsey was required to show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Because he always intended to plead guilty, we found that he was not prejudiced. *Lindsey II*, slip op. at *7.

[11] Lindsey appealed, but our Supreme Court denied transfer. He then appealed to the United States Supreme Court, arguing that he had been held to an incorrect standard. He argued, and the State conceded, that to show prejudice stemming from the ineffective assistance of counsel at the plea bargaining stage of trial, he simply had to show that the end result would have been more favorable to him had he received the effective assistance of counsel. *See Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 133 (2012). In light of the parties' agreement that the incorrect standard had been applied, on October 3, 2016, the

United States Supreme Court vacated our decision in *Lindsey II* and remanded the case to us.

## Discussion and Decision

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Shanabarger v. State*, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* If not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a post-conviction proceeding. *Timberlake v. State*, 753 N.E.2d 591, 598 (Ind. 2001).

Our Supreme Court has summarized the standard applied to claims of ineffective assistance of counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *accord Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id.* at 687. Second, the defendant must show

that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* at 689. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Bieghler v. State*, 690 N.E.2d 188, 199 (Ind. 1997); *Davis v. State*, 598 N.E.2d 1041, 1051 (Ind. 1992); *Ingram v. State*, 508 N.E.2d 805, 808 (Ind. 1987).

*Timberlake*, 753 N.E.2d at 603.

# I. Counsel's Performance

[14] The State argues that trial counsel's performance was objectively reasonable. It notes that, had Lindsey convinced the trial court that his crimes were part of a single criminal episode, he would have received a maximum sentence of thirty years. Moreover, he preserved his ability to argue that he should receive an even shorter sentence and to appeal whatever sentence the trial court eventually decided to give. Because the determination of whether certain offenses constitute a single episode of criminal conduct "is a fact-sensitive inquiry,"

*Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014), the State concludes that we cannot say that trial counsel was ineffective where there was a chance that the trial court would accept counsel's argument.

[15]  At his sentencing hearing, the parties argued over whether Lindsey's actions were a single episode of criminal conduct. Trial counsel cited to *Reed v. State*, 856 N.E.2d 1189 (Ind. 2006), stating that the case stood for the proposition, "even though it's not a critical ingredient, it's the timing or whatever that makes the difference." Sent. Hrg. Tr. p. 43. In that case, the defendant was in a car chase with police when he "stopped his car, opened the door, and fired a gunshot in the direction of Officers Roach and Beachum, whose cars were stopped within yards of each other." *Reed*, 856 N.E.2d at 1201. Within five seconds, he fired more shots at Officer Beachum. *Id.* Our Supreme Court held that these shots—fired from the same car, at the same two officers, within a span of five seconds—constituted a single episode of criminal conduct, and that the defendant should not have been sentenced for two counts of attempted murder. *Id.*

[16]  After the trial court pulled up the case, it and trial counsel had the following colloquy:

> THE COURT: Mr. Howe, didn't Reed involve a guy that was being chased by the police? Didn't Reed involve a guy who stopped his flight in a car and took shots at one police officer, gets in his -- or I don't know if he got out. But he shoots at a guy, a police officer. He goes driving off again. He stops again. He shoots at another officer. And didn't Reed stand for the

proposition that in fact these were not a continuing episode of violence? Isn't that the facts of Reed?

MR. HOWE: But the thing is they go into the statements about the timing becomes very -- of great importance or whatever. And we would just like the Court to consider that as to whether this was an --

THE COURT: What's your argument? I don't get your argument.

MR. HOWE: Well, what I'm saying is it was all one—he was doing one thing. It was an episode of trying to get a car to try to get out of town. It was a continuing endeavor with one accomplishment that he was set to try to get to.

THE COURT: I'm not very good at – I never play poker because anybody that's at the table would know whether I have a good hand or a bad hand. And obviously if you're dealing out the cards, you didn't give me a very good hand. Because a person who is in a chase, who stops a car and shoots at a police officer, goes on with the chase, stops and shoots at another police officer, they said that is not a continuing episode of violent activity. And you're telling me that this is more of a continuing act—series of episodes because there was an attempt to grab somebody. It didn't work. The man goes home and comes back and grabs somebody. And that is less of a—that is more of a continuing episode?

MR. HOWE: We believe that it is a continuing episode.

THE COURT: Based on what though? Not the facts of -- not the distinction of those facts. What, on the objective to get a car to get out of town?

MR. HOWE: That's correct. He objectively -- that was the goal was to get a car to get out of town and --

THE COURT: Well, wasn't Reed having a single objective which is -- he already had the damn car. He's in the car. He's going. And his objective is to get away from the cops. So if your distinction is the object, the intent thing of what he wanted to do, Reed even more is a single objective that never changed. I don't get the argument at all. Sorry.

Sent. Hrg. Tr. p. 45-47.

[17]  While it appears that the trial court got the holding of *Reed* exactly backwards, thinking that our Supreme Court found multiple episodes rather than a single episode, we find it notable that trial counsel did not attempt to correct that misapprehension, despite being asked directly by the trial court what the holding was. Even if he had, we cannot say that trial counsel's belief, that the instant case is analogous to *Reed*, was reasonable. *Reed* involved a defendant who shot at the same two officers, from the same location, with the same gun, within a span of five seconds. In contrast, Lindsey attacked two different women, with two different weapons, in two different locations, and went home and to the bank in between. The time in between the incidents was contested, but the events were separated by a minimum of thirty minutes, and the State presented evidence that the events were separated by a full two hours. Trial counsel's advice, which he has conceded that he gave, "It was my opinion that it was a continuing criminal scheme or plan, because the one attempt was within a half an hour of the actual taking of the person," PCR tr. p. 9, fell below

the standard of performance required of attorneys. Our conclusion would not change based on whether trial counsel said this as a guarantee or as a best prediction of the trial court's decision—either statement would be unreasonable.

[18] We would be remiss, however, if we did not take the opportunity to reemphasize the discretion granted to attorneys and their clients in pursuing trial strategies. Trial counsel would *not* have fallen below the standard required of attorneys by merely broaching the possibility of arguing a single episode of criminal conduct in order to reduce Lindsey's sentence by two years. If trial counsel had explained the doctrine, informed Lindsey that there was not a good chance of the trial court accepting the argument, and mentioned the significant chance that the trial court would not accept the argument, which would potentially subject Lindsey to a forty-year sentence, then it would ultimately be Lindsey's choice whether to accept that risk. If Lindsey had decided to take a fully-informed gamble, we would be engaging in hindsight bias to question it.

[19] But that is not what happened in this case. Instead, trial counsel predicted to Lindsey that by making an open guilty plea Lindsey would receive no more than thirty years. Asked at his PCR hearing, "had you known that the 40 was absolutely in play and this was not a criminal episode, would you have elected to take that plea at that time," Lindsey answered, "At that time, yes." PCR Tr. p. 12. We cannot say that trial counsel's advice and performance were adequate.

# II. Prejudice

[20] Having found that trial counsel's performance was ineffective, we turn to whether Lindsey was prejudiced thereby. "[A]ny amount of actual jail time has Sixth Amendment significance." *Glover v. U.S.*, 531 U.S. 198, 203 (2001). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147 (2012). In addition to showing a reasonable probability that the deal would not have been cancelled by the prosecutor or rejected by the trial court, defendants must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

[21] According to Lindsey, Lindsey's trial counsel approached him just before signing the plea deal:

> he said, "Look, the plea is 32, if we argue single criminal episode, the maximum you could get is 30 years and it could possibly go down to as low as 20 or lower, possibly, it would be in the judge's hands." And he wanted to know if I wanted to try that. And with him being the attorney I said, "Sure, you know what's best."

PCR Tr. p. 11-12. As noted above, he testified that he would have taken the thirty-two-year agreement had he known that it was possible to receive a forty-year sentence, and nothing in his trial counsel's testimony or anything else in

the record indicates otherwise.[2] Moreover, he and the prosecutor had the thirty-two-year deal completely drafted and signed, and were prepared to submit it to the trial court; Lindsey has demonstrated a more than reasonable probability that the prosecutor would have gone along with the agreement. And because a sentence of thirty-two years out of a maximum of forty is neither notably high nor low, we believe there is at least a reasonable probability that the trial court would have accepted the agreement.

[22] While most cases in which a defendant alleges that the ineffectiveness of his counsel led him to fail to take an advantageous plea deal will be heavily fact-sensitive, Lindsey's case comes to us in a unique circumstance. He and the prosecutor were moments away from submitting a mutually agreed upon plea deal when, at the last instant, his trial counsel gave him erroneous advice that caused him to plead guilty without any set sentence. Under these facts, we have little doubt that, but for trial counsel's ineffectiveness, Lindsey would be serving a thirty-two-year sentence today. Lindsey has met his burden of showing that he was prejudiced.

---

[2] The State argues that Lindsey did know that a forty-year sentence was possible because the trial court informed him, "theoretically if the facts allowed it, I could say I'm stacking them, I'm racking them, and you're in for forty years, period, all executed, worst case scenario." Guilty Plea Hearing Tr. p. 26-27. Lindsey's attorney, however, gave him the unreasonable prediction that this would not happen; the trial court's mention of this "theoretical" possibility does not persuade us that Lindsey suffered no prejudice.

# III. Remedy

[23]     In one of its companion cases holding that a counsel can be ineffective for failing to enable a defendant to accept a good plea agreement, the United States Supreme Court discussed the issue of what would constitute an appropriate remedy:

> Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Thus, a remedy must "neutralize the taint" of a constitutional violation, *id.* at 365, 101 S.Ct. 665, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution. *See Mechanik*, 475 U.S. at 72, 106 S.Ct. 938 ("The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences").
>
> The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining

whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

*Lafler*, 566 U.S. at 170-71.

[24] We find that Lindsey's case falls precisely into this description. And because of the unique circumstances of his case—where he was moments away from submitting a fully-written and signed plea agreement with a thirty-two-year sentence but was dissuaded at the last moment by the erroneous advice of his lawyer—we can measure precisely the amount of prejudice Lindsey suffered as a result of the ineffectiveness of his counsel. But for the poor advice of his attorney, Lindsey would have received a thirty-two-year sentence. Accordingly, we reverse and remand the decision of the PCR court with instructions to modify Lindsey's sentence from forty years to thirty-two years.[3]

[25] The judgment of the post-conviction relief court is reversed and remanded with instructions to reduce Lindsey's sentence to thirty-two years.

[26] Mathias, J., and Pyle, J., concur.

---

[3] Lindsey maintains his argument that his guilty plea was not knowing, intelligent, or voluntary because of his lawyer's advice, arguing that "[d]efendants who can prove that they were actually misled by the judge, prosecutor, or defense counsel about the choices before them will present colorable claims for relief." *White v. State*, 497 N.E.2d 893, 905-06 (Ind. 1986). Because we grant Lindsey relief on his other claim, we decline to address this argument.