## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2018, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Laurentino Zuniga
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Laurentino Zuniga,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | November 9, 2018<br><br>Court of Appeals Case No.<br>02A03-1711-PC-2844<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck, Judge<br><br>Trial Court Cause No.<br>02D04-0410-FA-60 |

**Tavitas, Judge.**

# Case Summary

Laurentino Zuniga, pro se, appeals the post-conviction court's ("PC court") denial of his petition for post-conviction relief ("PCR"). We affirm.

# Issues

Zuniga raises two issues on appeal, which we restate as follows:

I. Whether Zuniga entered his guilty plea with knowledge of his *Boykin* rights.

II. Whether Zuniga received ineffective assistance of counsel.

# Facts

Zuniga was born in Mexico, and his native language is Spanish. The facts as stated in Zuniga's direct appeal are as follows:

> In October 2004, while the [nine year-old] victim was sleeping in her bed, Zuniga woke her up, took her to his bedroom, and assaulted her. Specifically, Zuniga first placed his penis in the victim's vagina. He later placed his penis in the victim's anus. When the victim asked him to stop because it hurt, Zuniga refused. After the sexual assault, Zuniga cut the victim's finger with a pin and made her "blood swear" not to tell anyone what he had done. Zuniga then pulled a religious medallion out of his wallet and forced the victim to kiss it and swear not to tell anyone what he had done. Zuniga also threatened to kill the victim if she told anyone what had happened.
>
> When the victim's mother returned home, she found the naked victim standing in her bedroom with blood running down her legs. When her mother asked her what had happened, the victim held out her finger and said, "Mommy, I can't tell you. I can't tell you." The victim was taken to the hospital where it took

hours of surgery to stop the bleeding and repair her vagina. She was in severe pain for a week after surgery and uncomfortable for several weeks after that because of a series of infections, and has suffered a permanent loss of hymenal tissue. The victim still screams out in the middle of the night, and her mother now takes medications for depression and anxiety.

*Zuniga v. State*, No. 02A03-0509-CR-410, slip op. at 2-3 (Ind. Ct. App. Mar. 6, 2006) (internal citations omitted). On October 15, 2004, Zuniga was charged with two counts of child molesting, Class A felonies, and one count of child molesting, a Class C felony.

[4] The trial court conducted Zuniga's initial hearing on October 20, 2004. Beforehand, Zuniga watched a Spanish language advisement of rights video recording ("advisements video"). A Spanish-English interpreter was present as Zuniga watched the advisements video. Zuniga did not express any confusion or need for clarification. Under questioning, the interpreter represented to the trial court that Zuniga had both watched and understood the advisements video. *See* Exhibits p. 92. The English translation of the advisements video, which included an advisement of a defendant's *Boykin*[1] rights, provided as follows:

---

[1] In *Boykin v. Alabama,* the United States Supreme Court declared that the record for a guilty plea must show that the defendant voluntarily and understandingly waived the following federal constitutional rights: (1) "the privilege against compulsory self-incrimination"; (2) "the right to trial by jury"; and (3) "the right to confront one's accusers." *Ponce v. State,* 9 N.E.3d 1265, 1269 n.3 (Ind. 2014) (quoting *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969)).

You have the right to a speedy and public trial by a court or by a jury in the county where the crime was committed.

If there is a trial you are presumed innocent unless and until the state of Indiana proves your guilt beyond a reasonable doubt. You have the right to confront all the witnesses against you and to see, listen to, question and cross-examine those witnesses. You have the right to demand that the witnesses are present in any hearing or trial and to witness in your favor and the court will help you in that right to issue citations. You have the right to remain silent [sic] they can't demand that you give any testimony or that you make any statement against yourself or against any other person. On the other hand, you have the right to be heard yourself alone or your attorney in any hearing or trial. Please remember, however that, anything that you say may be used against you in the court.

*Id*. at 87.

[5] On December 27, 2004, the State tendered to Zuniga's counsel a thirty-year plea offer that was written in English. Under the plea offer, Zuniga would plead guilty to one count of child molesting, a Class A felony, and one count of child molesting, a Class C felony, and Zuniga would serve concurrent sentences totaling thirty years. Zuniga alleges that, without providing an interpreter and without explaining the associated risks, benefits, and implications, Attorney Miller threw the plea offer down in front of Zuniga and instructed Zuniga to sign. Zuniga rejected the plea offer.

[6] On May 17, 2005, Zuniga pleaded guilty, pursuant to an open plea, to two counts of child molesting, Class A felonies, and one count of child molesting, a Class C felony. No written plea agreement was tendered to the trial court. Zuniga appeared at the guilty plea hearing with counsel, Attorney P. Stephen

Miller. An interpreter translated the guilty plea hearing. During the hearing, Zuniga occasionally and readily expressed confusion and sought additional clarification. *See* Appellant's App. Vol. II p. 106 ("At the hearing, on several occasions, Zuniga asked the court to repeat questions because he did not understand.").

[7] On June 17, 2005, Zuniga moved to withdraw his guilty plea; the trial court denied Zuniga's motion. At the sentencing hearing, on June 20, 2005, the trial court imposed consecutive thirty-year sentences on the two Class A felonies and a concurrent four-year sentence on the Class C felony. Zuniga, thus, received an aggregate sixty-year sentence.

[8] On direct appeal in 2006, Zuniga argued that the trial court erred in imposing consecutive sentences. We concluded that the trial court found three proper aggravating circumstances that supported its imposition of consecutive sentences, and we affirmed Zuniga's sentence. *Zuniga*, No. 02A03-0509-CR-410, slip op. at 6-7.

[9] On November 20, 2015, Zuniga filed a PCR petition by affidavit, wherein he alleged that: (1) he was not properly advised in Spanish of his *Boykin* rights; (2) Attorney Miller failed to properly explain the State's first thirty-year plea offer, which Zuniga would have accepted, had he understood it; and (3) Zuniga watched the advisements video, but did not understand the advisements.

[10] In opposition to Zuniga's PCR petition, the State tendered the affidavit of Attorney Miller. Attorney Miller averred that he did not provide an interpreter

when he discussed the State's first plea offer with Zuniga because Attorney Miller believed that Zuniga could and did understand the discussion. Attorney Miller also denied that he instructed Zuniga to sign the plea offer without first explaining the associated risks, benefits, and implications.

[11] On or about October 11, 2014, the trial court learned that the interpreter, who assisted at Zuniga's guilty plea hearing, had incorrectly translated portions of the guilty plea proceedings, including the *Boykin* advisements.[2] On April 14, 2016, the PC court determined that an evidentiary hearing was necessary on the limited question of whether Zuniga was properly advised of his *Boykin* rights before Zuniga entered his guilty plea. The PC court conducted the evidentiary hearing on November 18, 2016.

---

[2] As the PC court later found:

> The guilty plea transcript indicates that the three rights designated in *Boykin v. Alabama*, 395 US. 238 (1969) – the right to trial by jury, the right to confront and cross-examine witnesses, and the right against compelled self-incrimination – were not correctly translated.
>
> As to the right to a jury trial, Mr. Zuniga was advised only that he had "*el derecho a ir a un juzgado*" (the right to go to a courthouse). He was advised that he had "*el derecho a tener testigos en contra suya y a favor*" (the right to have witnesses against you and in your favor), but nothing was said about cross- examining the witnesses. The right to remain silent (*el derecha de permanecer en silencio*) was correctly translated, but the remainder of the advisement on that point ("*no puede decir nada a favor suyo o en contra suyo*," "you cannot say anything on your behalf or against you") appeared to deny Mr. Zuniga the right to testify on his own behalf.

Appellant's App. Vol. II p. 47 (internal citations omitted); Exhibits pp. 6-7.

On October 23, 2017, the PC court entered its findings of fact and conclusions of law. The PC court concluded that: (1) although Zuniga's *Boykin* rights were incorrectly translated at the guilty plea hearing, the *Boykin* rights were correctly stated in the advisements video; (2) Zuniga acknowledged that he was shown the advisements video and "made no complaint about not understanding the advisement at that time"; (3) "[a]side from the *Boykin* rights, Mr. Zuniga . . . identified no specific matters as to which he lacked knowledge as a result of inadequate translation of advisements given by the Court at the guilty plea hearing"; (4) Zuniga failed to show that such knowledge would have changed his decision to plead guilty; and (5) Attorney Miller did not render ineffective assistance of counsel. Appellant's App. Vol. II p. 52. Thus, the PC court denied Zuniga's petition for PCR. Zuniga now appeals.[3]

## Analysis

Zuniga appeals the denial of his PCR petition. Our supreme court has stated:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion

---

[3] After submitting his appellant's brief, Zuniga filed a motion to enter facts outside the record with a verified affidavit. Zuniga's motion is denied, as the record on appeal is sufficient to address the dispositive issues discussed in this opinion.

opposite that reached by the post-conviction court. [Where, as here, a post-conviction court has made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we] do not defer to the post-conviction court's legal conclusions[.] A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made.

*Hollowell v. State,* 19 N.E.3d 263, 268-69 (Ind. 2014) (internal quotations and citations omitted). As the clearly erroneous standard "is a review for sufficiency of evidence, we neither reweigh the evidence nor determine the credibility of witnesses." *State v. Greene,* 16 N.E.3d 416, 418 (Ind. 2014). "Rather, we 'consider only the evidence that supports that judgment and the reasonable inferences to be drawn from that evidence.'" *Id*. (*quoting Ben-Yisrayl v. State,* 738 N.E.2d 253, 258-59 (Ind. 2000)).

### I. *Boykin Rights*

[14] Zuniga argues that he did not enter his guilty plea knowingly or voluntarily because the interpreter at his guilty plea hearing failed to correctly translate the trial court's *Boykin* advisement. A PC proceeding is a proper vehicle for challenging a guilty plea, and we look at the evidence before the PC court that supports its determination that a guilty plea was voluntary, knowing, and intelligent. *Moffitt v. State*, 817 N.E.2d 239, 248-49 (Ind. Ct. App. 2004), *trans. denied*.

[15] "In considering the voluntariness of a guilty plea, we start with the standard that the record of the guilty plea proceeding must demonstrate that the

defendant was advised of his constitutional rights and knowingly and voluntarily waived them." *Ponce v. State*, 9 N.E.3d 1265, 1272 (Ind. 2014) (citing *Boykin,* 395 U.S. at 242). "[A] formal advisement and waiver are not required; rather, the defendant 'must have only known that he was waiving his *Boykin* rights by pleading guilty.'" *Dewitt v. State,* 755 N.E.2d 167, 171 (Ind. 2001). *Boykin* requires that a trial court accepting a guilty plea "must be satisfied that an accused is aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers." *Winkleman v. State,* 22 N.E.3d 844, 851 (Ind. Ct. App. 2014) (citing *Boykin,* 395 U.S. at 243).

[16] Where a defendant demonstrates that the trial court failed to properly give a *Boykin* advisement during the guilty plea hearing, the defendant has met his threshold burden for obtaining PCR. *Ponce*, 9 N.E.3d at 1270. The State, however, may prove "that the petitioner nonetheless knew that he was waiving such rights." *Id*. at 1273; *see Youngblood v. State,* 542 N.E.2d 188, 189 (Ind. 1989) (". . . [O]nce a state prisoner has demonstrated that the plea taking was not conducted in accordance with *Boykin,* the [S]tate may, if it affirmatively proves in a post-conviction hearing that the plea was voluntary and intelligent, obviate the necessity of vacating the plea."). "[W]here the record of the guilty plea hearing itself does not establish that a defendant was properly advised of and waived his rights, evidence outside of that record may be used to establish a defendant's understanding." *Ponce*, 9 N.E.3d at 1272.

[17] Here, although the trial court gave the *Boykin* advisements at Zuniga's guilty plea hearing, it is undisputed that the interpreter failed to translate them

correctly. Thus, the trial court effectively failed to give the advisement. *See id.* at 1273 (finding no difference between a translated "advisement from the mouth of the court-appointed interpreter" and the same advisement from the trial court).

[18] To prove that Zuniga made a knowing waiver of his *Boykin* rights, the State introduced:

> . . . (1) the rights advisement videotape played before the initial hearing; (2) a DVD copy of the rights advisement videotape, produced for the convenience of the Court in viewing the rights advisement; (3) testimony of Jon Hallett, who produced the DVD copy, that it contained a true and accurate copy of the contents of the videotape; (4) an affidavit of certified Spanish-English translator Diana Vegas, stating that she had listened to the DVD copy of the rights advisement and produced a Spanish transcript and an English translation of the portion of the advisement related to constitutional rights, both of which were attached to the affidavit; and (5) a transcript of Mr. Zuniga's initial hearing.

Appellant's App. Vol. II pp. 47-48. The State also presented evidence that: (1) an interpreter was present when Zuniga viewed the video recording; (2) the trial court asked the interpreter whether Zuniga understood the advisements; (3) the interpreter responded affirmatively; and (4) Zuniga did not contradict the interpreter or otherwise indicate to the trial court – as Zuniga did ably at the guilty plea hearing – that Zuniga was confused by the advisements video.

[19] Based on the foregoing, we conclude that, although Zuniga carried his initial burden of demonstrating that he was improperly advised of his *Boykin* rights at

the guilty plea hearing, the State successfully demonstrated that Zuniga understood his constitutional rights at the initial hearing. Zuniga's testimony, at the PCR hearing—that he viewed, but did not understand, the advisements video—is an invitation to us to reweigh the evidence, which we cannot do. *See Ben-Yisrayl,* 738 N.E.2d at 258-59.

[20] The PC court's finding that Zuniga understood and waived his *Boykin* rights is not clearly erroneous. Considering the evidence that supports the judgment and the reasonable inferences therefrom, we cannot say that the evidence, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the PC court.

## II. *Ineffective Assistance of Counsel*

[21] Zuniga also appeals the PC court's denial of his claim of ineffective assistance of trial counsel. Specifically, Zuniga maintains that, because Attorney Miller did not provide an interpreter, Zuniga unwittingly rejected the State's favorable plea offer that would have allowed Zuniga to serve concurrent sentences, totaling thirty years, for a Class A felony and a Class C felony. Zuniga ultimately pleaded guilty, with sentencing open to the trial court, to two Class A felonies and a Class C felony, and he was sentenced to an aggregate sentence of sixty years.

[22] To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) his or her counsel's performance was deficient, and (2) the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v.*

*State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *reh'g denied*, *cert. denied*, 534 U.S. 830, 122 S. Ct. 73 (2001). The failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Ineffective assistance of counsel claims, thus, can be resolved by a prejudice analysis alone. *Id.*

[23] An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. 2012). A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Id.* Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance of counsel. *Id.*

[24] In analyzing prejudice in the context of a guilty plea, we review such ineffective assistance of counsel claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* created two categories of claims and enunciated different treatments of each respective category, depending upon whether the ineffective assistance allegation related to (1) an unutilized defense or failure to mitigate a penalty, or (2) an improper advisement of penal consequences. *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (citing *Segura*, 749 N.E.2d at 507), *trans. denied*.

Further, as a panel of this court recently opined:

> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." In addition to showing a reasonable probability that the deal would not have been cancelled by the prosecutor or rejected by the trial court, defendants must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."

*Lindsey v. State*, 71 N.E.3d 428, 434 (Ind. Ct. App. 2017) (quoting *Missouri v. Frye,* 566 U.S. 134, 132 S. Ct. 1399 (2012)), (internal citations omitted), *trans. denied, cert. denied*, 138 S. Ct. 636 (2018).

On appeal, Zuniga argues, at-length, that Attorney Miller's failure to provide an interpreter "den[ied] Zuniga access to the Court." Appellant's Br. p. 29. Zuniga argues:

> At no time did counsel communicate with Zuniga during pretrial in a language that Zuniga clearly understood. Counsel failed to understand that although Zuniga understood some basic English words, Zuniga did not understand enough of the English language, and in particular the professional language of the legal system, to clearly and completely communicate.

Appellant's App. Vol. II p. 154. It is difficult to reconcile Zuniga's contentions now, in which he characterizes himself as rendered virtually absent from his

own proceedings, versus Zuniga's PCR petition, in which he recounts his discussions with Attorney Miller in great detail as follows:

> Counsel informed Zuniga that "you have no defense, you must plea[d] guilty. If you plead guilty, you will spend only a few years in prison. If you go to trial, you will spend the rest of your life in prison."
>
> * * * * *
>
> Counsel abandoned Zuniga's interests from the very beginning in this case, and after failing to perform any pretrial investigation, [Counsel] informed Zuniga "there is no defense. I will get you a plea bargain. You cannot go to trial with this. If you do, you will spend the rest of your life in prison."

Appellant's App. Vol. II pp. 157, 159 (emphasis added).

[27]     As the PC court found, the record calls into question Zuniga's claim of being rendered virtually absent from his own proceedings and, instead, supports Attorney Miller's averment that Zuniga possessed sufficient English-language capacity to comprehend, digest, and later recount Attorney Miller's discussions. As the State argues, "despite [Zuniga's] claimed lack of proficiency in English, [Zuniga] purports to quote [Attorney] Miller verbatim . . . with respect to advisements Miller gave [Zuniga] with respect to the plea offer[.]" Appellee's Br. p. 19. As the PC court found, and we agree, "Zuniga has shown only that he now wishes—too late—that he had accepted the 30-year offer." Appellant's App. Vol. II pp. 52-54 (internal citations omitted).

[28] Our supreme court recently reiterated Indiana's commitment to ensuring "a foreign language defendant's capacity to understand and appreciate the proceedings, to participate with his counsel, to confront his accusers, and to waive rights knowingly and intelligently"; these rights are "undermined without an interpreter actively participating in his defense." *Ponce,* 9 N.E.3d at 1272. In our view, Zuniga has attempted here to exaggerate his challenges with the English language in an effort to invoke and exploit Indiana's commitment to fair access for foreign language defendants. From its vantage point of being able to view and hear the witnesses and to assess their credibility, the PC court regarded Zuniga's account with skepticism and did not find him credible.

[29] Based on the foregoing, the PC court's finding that Attorney Miller did not render ineffective assistance of counsel is not clearly erroneous and does not leave us with a definite and firm conviction that a mistake has been made. *See Ben-Yisrayl,* 719 N.E.2d at 106.

# Conclusion

[30] The PC court properly denied Zuniga's claims that Zuniga did not enter his guilty plea with knowledge of his *Boykin* rights and that Zuniga received ineffective assistance of trial counsel. We affirm.

[31] Affirmed.

[32] Brown, J., and Altice, J., concur.